# Staunton.

W. B. SNIDOW, GUARDIAN AD LITEM FOR WILLIAM E. FER-
RELL v. FIRST NATIONAL BANK OF NARROWS, ADMINIS-
TRATOR OF R. M. ALVIS, DECEASED, ET ALS.

September 10, 1941.

Record No. 2361.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and
Spratley, JJ.

The opinion states the case.

*James L. Warren* and *W. B. Snidow,* for the appellant.

*Farrier & Farrier,* for the appellee.

SPRATLEY, J., delivered the opinion of the court.

R. M. Alvis, seventy-nine years of age, a citizen and resident of Giles county, died in that county in September, 1938. He was a bachelor and left surviving him, as his sole heir-at-law, a niece. In 1931, he executed a will, in which he named the First National Bank of Narrows as executor. The will was probated but was subsequently annulled and set aside in a court proceeding for that purpose, as being violative of the rule against perpetuities. Thereafter, the First National Bank of Narrows qualified as administrator of his estate.

Alvis lived about one-half mile from the home of E. E. Ferrell, the father of a child named William E. Ferrell. The child was seven years of age at the date of the death of Alvis. Alvis visited the home of Ferrell, Sr., almost every day, and often played with the child and took him, as his companion, on hunting trips. He had become very much attached to this boy and, during the several years before his death, had stated to various people his strong affection for him and his intention to ''leave'' him something to aid him in securing an education. He said that he wanted to give something to the child ''so he could get ahold of it,'' and his father could not ''run through with it.'' Within two months of his death, he told several persons that he ''had it fixed'' for the child.

Alvis was the owner of a certificate for five shares of the capital stock of the Mountain Trust Bank of Roanoke, Virginia. On November 1, 1937, he executed on the back of this certificate an absolute assignment and transfer of the five shares of stock, standing in his name, to William E. Ferrell, his infant friend, and a power of

attorney "irrevocably" appointing E. E. Ferrell to transfer the stock on the books of the Mountain Trust Bank. The teller of the First National Bank of Narrows witnessed his signature to the assignment and the power of attorney. The stock certificate was then placed by Alvis in his safety deposit box in the First National Bank of Narrows. Alvis kept an account with this bank and was well acquainted with its officers.

On January 21, 1938, Alvis again went to the First National Bank. Getting out some of his papers, he went into the office of A. E. Shumate, the president of the bank, to write some letters and do some "figuring" and writing. This was his last visit to the bank. Shumate, who was present in his office on the occasion of this visit, states: "I think he possibly wrote a letter or two, and he said to me that he was leaving certain things in that box, which he wanted us to mail out, certain letters, after his death, and that the instructions were in one of those letters. I kidded him about the fact that he would outlive all of us, and I said something to the boys in the bank about Uncle Ralph thinking he was going to die, and that he was leaving certain things for us to carry out for him." Shumate went on further to say that Alvis told him "that he was entrusting everything to us to look after and take charge of, and among those things were his will and certain letters to be mailed out," and that everything pertaining to the will was in his safety deposit box. He then left the key with the assistant cashier of the bank and told Shumate he was doing so.

After the death of Alvis, the officers of the First National Bank of Narrows opened his safety deposit box with the key which had been left at the bank. In this box was found the will of Alvis, other papers, and a sealed envelope, with a three-cent stamp thereon, addressed to William E. Ferrell, Chapel, Virginia, in care of E. E. Ferrell and Eula Ferrell. The officer of the bank, in accordance with the directions received from Alvis, duly deposited this envelope in the post office, and

it was received by William E. Ferrell on October 3rd, 1938. When the envelope was opened, it was found to contain the certificate for five shares of stock, assigned and transferred to William E. Ferrell, and a letter in the handwriting of R. M. Alvis, unsigned and undated. The letter read as follows:

"Dear Billy: I am giving you some stock which I think is a good investment. When you get older you can look back and see that Uncle Ralph liked you just like he always told you he did. Billy, I want you to buy a ewe lamb from your daddy each year and swap your male lambs to daddy for his ewe lambs and get daddy to keep them on the shares and that way you and daddy will soon have a nice bunch of sheep.

"Billy, I want you to give some of this money to Dorothy as you know that I liked Dorothy too. Billy, I hope you will never learn to use tobacco in any form. Billy I want you to keep this stock as long as you live as I think it will pay you a good dividend each year. The Narrows bank will tell daddy how to get this stock transferred to you.

"Everett I hope you will help Billy to do these things as you know that I like every bone in his little body, and I will be glad if you will keep this letter until he grows up and let him read it himself as I hope he will always think of me as one of his best friends.

"Eula you see that he has good warm underclothes."

The will of Alvis, as originally drawn, contained mention of the five shares of stock; but all reference thereto had been later cancelled and erased with an indelible pencil of the same type as that with which the above letter was written.

In pursuance of the letter and the written assignment of the stock, E. E. Ferrell undertook to have the Mountain Trust Bank transfer the stock on its books to the infant, William E. Ferrell. The bank refused to do so, having been notified by the administrator of the estate of Alvis that it claimed the stock for the estate of its decedent.

In a proceeding by the Mountain Trust Bank to determine the ownership of the stock, the trial court held that the "intended gift" of the stock to William E. Ferrell failed for want of delivery. From that ruling this appeal was taken.

The intention of Alvis to make a gift of the stock to the infant, William E. Ferrell, is clear, express and undisputed. It is admitted by the defendant in error in the pleadings and by the trial judge in his opinion.

The sole question for our decision is whether, under the circumstances, there was such a delivery of the stock certificate as to constitute a valid gift inter vivos.

█ The principles relating to the delivery of personal property by way of a gift, either *inter vivos* or *causa mortis,* and delivery of a deed for real estate are much the same, with exceptions not necessary to be here noted. *Frank* v. *Frank,* 100 Va. 627, 42 S. E. 666; *Payne* v. *Payne,* 128 Va. 33, 104 S. E. 712; *Thomas* v. *First Nat. Bank,* 166 Va. 497, 186 S. E. 77.

██ The general rule has been stated in a multitude of cases. For the gift to be complete, there must be an intention to give and a delivery, actual or constructive, of the thing given. The intention to give, manifested by the words or acts of the donor, is often the crucial test in determining a constructive delivery. 16 Am. Jur., Deeds, sec. 115. The principal difficulty lies in applying the rule to the facts and circumstances of a particular case. As a result, many decisions are in conflict and impossible of reconciliation.

The following cases, decided upon facts and circumstances related to those of the instant case, guide us to a correct answer here.

█ In *Elam* v. *Keen,* 4 Leigh (31 Va.) 333, 26 Am. Dec. 322, this court said: "There are many things of which actual, manual tradition cannot be made, either from their nature or their situation at the time. It is not the intention of the law to take from the owner the power of giving these. It merely requires that he shall

do what, under the circumstances, will in reason be considered equivalent to an actual delivery.''

In *Thomas' Adm'r* v. *Lewis*, 89 Va. 1, 15 S. E. 389, 37 Am. St. Rep. 848, 18 L. R. A. 170, Judge Fauntleroy, in an exhaustive opinion reviewing many of the early authorities, on page 67, approved the following statement from *Cooper* v. *Burr*, 45 Barb. (N. Y.) 9: " 'The situation, relation, and circumstances of the parties and the subject of the *gift* may be taken into consideration in determining the intent to give, and the fact as to delivery. *A total exclusion of the power or means of resuming possession by the donor is not necessary.*' ''

In *Frank* v. *Frank, supra,* a donor, a short time before his death, caused six bonds, each for the sum of $250, to be written, signed and placed in the hands of a third person to be delivered, at his death, to certain of his children. There was no condition imposed upon complete delivery, except that they were to be delivered after the donor's death. It was held that delivery was complete, and that the donees were entitled to the bonds.

There it was said: ''The delivery must be in the lifetime of the grantor, and yet there may be an inchoate delivery in the grantor's lifetime which will become absolute at his death.''

In *Schreckhise* v. *Wiseman*, 102 Va. 9, 45 S. E. 745, this court approving *Frank* v. *Frank, supra,* held that a deed need not be delivered to the grantee in person, in order to be effectual, and that if delivered to a third person unconditionally, with direction to deliver it to the grantee after the death of the grantor, the delivery was effectual to pass title to the grantee.

In *Johnson* v. *Colley*, 101 Va. 414, 44 S. E. 721, the object of the donor's bounty was a child of tender years, too young to handle a large sum of money, which the donor desired to give her. The money was placed in the hands of the donor's friend as the surest means of securing the same for the benefit of the child. The person who received the money was held to be a trustee of the intended donee, and not the agent of the donor.

In *Payne* v. *Payne, supra,* Judge Prentis, reviewing the authorities, with reference to what constitutes the delivery of a deed, approved the following statement from 18 C. J., page 201:

■ "And where a deed was intended to be considered as delivered, it will not, as between the grantor and the grantee, be invalid for want of delivery, because of the fact that it remains in the grantor's possession. Likewise, there may be a sufficient delivery where the grantor by his acts or words expresses an intention to deliver the instrument and there is nothing to qualify the delivery. This is particularly true where a conveyance is one of voluntary settlement and the more so where the beneficiary is unable to protect his own interest, as where he is a child. Where the grantor reserves a life estate in the property and its possession and control, his retention of the deed is not inconsistent with the idea that a delivery was intended."

In *Thomas* v. *First Nat. Bank, supra,* a gift *causa mortis* was upheld where the donor, after learning of his serious illness, assigned and delivered, in blank, shares of stock to his wife; made a statement that they were her property; put the stock and memorandum in an envelope addressed to his wife; locked the envelope in a drawer in his office safe; and gave his wife a bunch of keys on which was the key to the locked compartment in the safe containing the above papers.

■ In *Trask* v. *Trask,* 90 Iowa 318, 57 N. W. 841, 48 Am. St. Rep. 446, a grantor, together with his wife, executed a deed to his son, and gave it to the cashier of a bank, with instructions that the contents of the envelope were for his son, if anything happened to him, the grantor. The court held that such act was a conveyance *in praesenti* to the son, vesting title immediately, and took effect upon the death of the grantor by relation from the delivery to the cashier of the bank. It was there said: "It is well settled, and may be said to be the established rule, that a deed may be delivered to a third person for the grantee, and, if subsequently as-

sented to by the grantee, it will be as good a delivery as if made directly to the grantee. But a delivery of a deed to a stranger, to be delivered to the grantee at the direction of the grantor, or with a reservation of the right in the grantor to countermand it, does not pass the title. * * * The facts attending the delivery to a third person, which may pass the title to the grantee, are not required to be such as that it is beyond the mental power of the grantor to alter his intention, or that he has not the physical power to regain possession of the deed.''

In *Innes* v. *Potter*, 130 Minn. 320, 153 N. W. 604, 3 A. L. R. 896, the facts and circumstances were somewhat similar to those in the instant case. There a certificate for stock was delivered to a third person, to be held by that person until the death of the donor, and was then to be delivered to the daughter of the donor. The court said the question before it was: ''Is it competent for a person to make a gift of personal property by delivery of the subject of the gift to a trustee where the delivery by the trustee to the donee and the beneficial enjoyment by the donee are postponed until the death of the donor?''

In holding that such delivery was sufficient, the opinion reads:

''Nor do we see any reason why the rules as to delivery to a third person, with direction to deliver to the donee on the death of the donor, should not apply to personal as well as to real property. Delivery is, of course, necessary to give effect to a gift, but so it is to give effect to a deed. If valid delivery may be made to a trustee in case of a gift of a deed of real property, why not in case of a gift of personal property? Not only do we think there should be no distinction between the two classes of property in this respect, but we are equally convinced that it is the settled law in most of the states of the Union that no such distinction does exist. (Citing cases.)

''We accordingly held that the owner of personal property may make a valid gift thereof, with the right of enjoyment in the donee postponed until the death of the donor, if the subject of the gift be delivered to a

third person, with instructions to deliver it to the donee upon the donor's death, and if the donor parts with all control over it, reserves no right to recall, and intends thereby a final disposition of the property given.''

A formal delivery of a deed or gift is not essential where the acts of the grantor or donor manifest an intent that as to him the transaction is complete. 2 Minor on Real Property, Ribble (2d Ed.), sec. 1066.

Where the nature of the thing is not capable of corporeal delivery, the delivery of the means of getting possession, or making use of the thing given, will suffice,—as, for example, the delivery of a key to a trunk, or a safety deposit box.

Of course, an intention to give, unaccompanied by a delivery, is ineffectual to constitute a gift. From this sound rule, we are unwilling to depart. If the intention to give is attended by such words or acts of the donor, which, under the circumstances and relations between the parties, indicate that the donor surrendered the power of dominion and control over the subject matter, then a delivery sufficient in law is made.

In the instant case, the wish, desire and intention of Alvis to vest the ownership of the stock in the infant, William E. Ferrell, is manifest from his words, his acts, and his writing. The specific nature and identity of the gift are set out in writing. The very language of the donor's letter stating, ''I am giving you some stock * * * ,'' shows that he intended it as a gift *in praesenti*. The fact that all reference to the stock was struck from the will of the donor indicates most strongly that Alvis did not consider the stock a part of his estate.

It is argued by the defendant in error that the donor had the mental power to alter his intention, and the physical power to cancel the assignment of his stock. The answer to this is that, after he had delivered the means of possession to another, he died without doing either. It seems to us more in accord with reason to determine the effect of the assignment and delivery by his acts and by his declared intention existing up to

the time of his death, than to refuse to give it effect because the intention might have been changed. The fact is that at no time was there the slightest indication of a change of mind on the part of the donor.

The donor made an absolute assignment of the stock to a named person. In his own handwriting, he unequivocally set out his plain intent and purpose. He divested himself of the immediate possession of the stock, and never undertook to regain possession. There is no evidence of any purpose of the donor to impose any condition upon the complete delivery of the stock, except that it was to be placed in the hands of the donee "after his death." It was not conditioned upon delivery in case of the donor's death. The delivery was of the character that the donor planned, and it worked out exactly as he had planned. Everything he said and did was in furtherance of his admitted intention. In every respect, the donor's intention, aided by his plan of delivery, was effectuated when the stock came into the hands of the donee. It was a practical way adopted by the donor to deliver to a child of tender years, that which he intended him to have.

We are of opinion that, under the peculiar facts and circumstances of this case, there was a sufficient delivery to pass to William E. Ferrell title and ownership of the five shares of stock. This view, we believe, is not only consonant with the right and justice of the cause, but is fully justified by the evidence in the record, by reason, and by the weight of authority. It is not in conflict, as we see it, with the sound general rule relating to the essentials necessary to effectuate a valid gift from a willing donor, who has the right to do with his property as he pleases.

For the foregoing reasons, the decree complained of is reversed and a decree will be here entered directing the Mountain Trust Bank to cause the five shares of its capital stock, standing in the name of R. M. Alvis, to be transferred upon its books by its proper officers to W. B. Snidow, guardian *ad litem* for William E. Ferrell, an infant.

*Reversed.*