## Richmond

MARY RUST, ET AL. v. ELIZABETH R. PHILLIPS, ET AL.,
EXECUTORS, ETC., ET AL.

March 4, 1968.

Record No. 6539.

Present, All the Justices.

*Lewis M. Costello; Theodore Polydoroff (Bryce Rea, Jr.; Kuykendall and Whiting, on brief), for appellants.*

*Thomas V. Monahan (Hall and Monahan, on brief), for appellees.*

SNEAD, J., delivered the opinion of the court.

In this appeal we are called upon to determine whether the evidence is sufficient to support a finding by the trial court that David N. Rust, Jr., deceased, made valid *inter vivos* gifts of certain negotiable instruments totaling $100,000 to his children.

On December 6, 1965, Elizabeth R. Phillips and Wilbur C. Hall, executors of decedent's estate, filed a bill of complaint which alleged, among other things, that the gifts in question were valid, but that the validity of the gifts had been questioned by certain heirs because they claimed there "was no completed delivery" of the property. The executors prayed that the court determine whether decedent's acts

were sufficient to constitute valid gifts. The following persons, with the amount of the gift purportedly made to each child shown in parenthesis, were named as defendants:

Mary Rust, Widow of David N. Rust, Jr.
Eleanor R. Bullock ($25,000)
Mary R. Clarke ($25,000)
Elizabeth R. Phillips, in her individual capacity ($25,000)
Caroline R. Williams ($7,500)
Elizabeth R. Phillips and Wilbur C. Hall, Trustees for W. S. Rust ($7,500)
David N. Rust, III ($10,000)

The answers of Mary Rust, David N. Rust, III, and Caroline R. Williams denied the validity of the gifts. However, the answers of Mary R. Clark, Eleanor R. Bullock, Elizabeth R. Phillips, and Elizabeth R. Phillips and Wilbur C. Hall, trustees for W. S. Rust, either alleged the validity of the gifts or sought the court's interpretation and construction of the decedent's acts in June 1963 when the gifts were alleged to have been made.

Evidence was taken *ore tenus* on March 9, 1966, and at the conclusion of the complainants' evidence, counsel for defendants Caroline R. Williams, Mary Rust and David N. Rust, III moved to strike it out because there had been no evidence showing "relinquishment of dominion and control" of the property in question by the decedent. The motions were overruled and exceptions noted. At the close of all of the evidence, counsel for Mrs. Williams again renewed his motion to strike on the ground that "the executors have not even shown a *prima facie* case" of an executed gift. A ruling was deferred until May 18, at which time the motion was overruled.

By its decree of June 17, 1966, the court held that the decedent, David N. Rust, Jr., had made valid *inter vivos* gifts of all the property in question. The defendants Caroline R. Williams, David N. Rust, III and Mary Rust objected and excepted to the entry of the decree and have appealed.

David N. Rust, Jr. died on October 14, 1963, at the age of 82. At the time of his death he was mentally alert and in full possession of his faculties but suffered from emphysema. Until his death, decedent was engaged in the business of making and buying real estate loans.

For approximately twenty years, decedent employed his daughter,

Elizabeth R. Phillips, as a part-time secretary to assist him with his affairs. Mrs. Phillips was given a "power of attorney * * * so that * * * [she] could do certain things for him." In addition, decedent appointed her a deputy to enter his safe deposit box at the Leesburg office of the Loudoun National Bank (now First and Merchants National Bank) where he kept his investments. Sometimes decedent would enter the box, and on occasions Mrs. Phillips would enter it "whenever he told me to."

Mrs. Phillips testified that on June 14, 1963 "* * * my father asked me to get certain notes from his safe deposit box for him, which I did." He then dictated letters to his six children. Each letter was dated June 14, 1963, and reads as follows:

"The enclosed notes of $———— are a gift for Christmas. The interest is to start December 29, 1963."

The decedent signed the letters typed by Mrs. Phillips, placed them in separate envelopes along with the real estate notes in the amounts heretofore stated, and sealed the envelopes.[1] He then handed all the envelopes to Mrs. Phillips and, after being thanked by her for his gift, expressed hope that "the money would do some good." Mrs. Phillips stated that at her father's instruction she returned the six sealed envelopes on the same day to decedent's safe deposit box. All of the notes involved were either payable to bearer or endorsed in blank. The envelopes remained in the safe deposit box, sealed, until decedent's death on October 14, 1963.

Subsequent to decedent's death, the executors of his estate opened the box for inventory purposes and the six sealed, unstamped envelopes were found among the contents of the box. The executors delivered the envelopes to the respective addressees, each of whom signed a receipt for the envelope and its contents.

Mrs. Phillips testified that she did not inform any of the children of the alleged gifts prior to her father's death, and that if he had requested a return of the envelopes "I suppose an employee would do what the boss says." At the conclusion of her testimony, the trial court requested the witness to state in detail what transpired on June 14, 1963, when the letters were written.

"THE COURT: Did he seal yours?

"THE WITNESS: Yes. He sealed them all and I thanked him for mine and I told him he was generous, etc. I thought he was. And he told me to put the letters in the safe deposit box and he would

---

[1] The record does not show whether each envelope contained the mailing address in addition to the name.

mail them or we could mail, or I could mail them at a later time. And after that he did suggest, maybe once, that he was going to mail them, but he didn't.

"THE COURT: Was any restrictions put on these, the delivery of these gifts other than what he stated in the letter?

"THE WITNESS: Not that I know of. Restrictions?

"THE COURT: When were you told to deliver them, or were you told?

"THE WITNESS: I wasn't told to deliver them—because

"THE COURT: Because what?

"THE WITNESS: Because I assumed he was going to mail them out, mail them to the people.

"THE COURT: He told you to put them in his safe deposit box?

"THE WITNESS: Yes. He didn't keep things, negotiable notes, things, lying around his house.

"THE COURT: I believe you stated in your testimony on direct examination that he had previously given gifts to the children and he had made investments for them.

"THE WITNESS: Yes.

"THE COURT: And to your knowledge, after he had made a gift to a child, he had never used it as his own or taken it back?

"THE WITNESS: No. Not to my knowledge.

"THE COURT: Did he tell you to put your envelope in the locked box, too?

"THE WITNESS: Yes.

"THE COURT: Was your envelope to be handled the same as all the others?

"THE WITNESS: Yes.

"THE COURT: When did you think that you would get possession of this money, your part?

"THE WITNESS: Well, I really didn't think too much about it, but according to the letter, I suppose—well, whenever he said 'Mail them out, mail them.'

"THE COURT: They were not stamped?

"THE WITNESS: No.

"THE COURT: And did you go directly to the locked box that same day?

"THE WITNESS: Yes, they went back in the same day.

"THE COURT: Was anything said to you by your father after that about these notes, or about these letters?

"THE WITNESS: He said once he thought he might mail them

out and then he told me maybe he'd mail them, mail them out, but then he said no, maybe not today. Something like that, after that. And as I recall, I think that he did write Mrs. Williams and say something about—the letter was exhibited here.

"THE COURT: Did you consider that these were under your control, or under the control of your father?

"THE WITNESS: Under the control of my father. I wasn't giving it."

Eleanor R. Bullock testified that she had a conversation with her father in July, 1963. On direct examination, she had this to say:

"Q. Now, in July of 1963, did your father say anything about gifts being made?

"A. Yes. He told me what he was giving me and I thanked him.

"Q. Did he tell you an express amount?

"A. Yes. He told me he was giving me $25,000. In fact, he told me what he was giving everybody.

"Q. Did you subsequently find it out what they received?

"A. I don't know what they received. He told me what he was going to give them.

\* \* \* \* \* \*

"Q. Did he tell you how the envelopes were addressed, if they were addressed?

"A. He told me what he had done. He told me he had put notes in an envelope and they were in his safe deposit box."

Mary R. Clarke stated she also had a conversation with her father "in the summer of 1963", at which time "he said he was going to \* \* \* 'split another melon', and that he was going to give us the money." She testified that she did not "know the amount he was going to give", and that decedent did not indicate when he contemplated making the gifts.

The decedent wrote a letter to his daughter, Caroline Williams, on October 9, 1963, five days before his death occurred in which he stated "I have had a very prosperous year and I am going to let you and Elizabeth participate in it for Christmas."

The record shows that decedent was aware of the impact of estate taxes. In 1957 he wrote letters to his children advising that he was making a distribution of notes valued at $250,000, and that "an equal division will be made" among the six children when he returned from a trip. He enclosed a receipt to be signed and returned as "evidence that the notes are yours." He expressed the hope that "the money will do some good." However, after consultation with a

certified public accountant he changed his mind and the gifts were not made. In 1959 decedent did execute a gift program whereby each child received a substantial sum of money.

The record further shows that investments made by decedent for some of the children were retained in his lock box; that Mrs. Phillips had secured a lock box of her own prior to 1962 in which she kept her valuables, and that according to the bank's records no entry was made by anyone in decedent's lock box between June 5 and 19 in 1963.

"It is well settled that the law does not presume a gift and where a donee claims title to personal property by virtue of a gift *inter vivos*, the burden of proof rests upon him to show every fact and circumstance necessary to constitute a valid gift by clear and convincing evidence. *Grace* v. *Virginia Trust Co.*, 150 Va. 56, 142 S.E. 378; *Nelson* v. *Liggan*, 189 Va. 637, 645, 53 S.E.2d 798; *King, Ex'x* v. *Merryman, Adm'x*, 196 Va. 844, 86 S.E.2d 141; *Rinehart* v. *Rinehart*, 14 Ill. App.2d 116, 143 N.E.2d 398.

"The common elements necessary to establish a gift *inter vivos* are stated in *Thomas* v. *First Nat. Bank*, 166 Va. 497, 504, 186 S.E. 77. They are: '(1) The gift must be of personal property; (2) possession of the property must be delivered at the time of the gift to the donee, or some other for him and the gift must be accepted by the donee; and (3) the title of the property must vest in the donee at the time of the gift.' 9 M.J. Gifts, § 8, p. 188.

"In order for a gift *inter vivos* to be effective there must be an intention *in praesenti* on the part of the donor to make the gift and there must be such actual or constructive delivery as divests the donor of all dominion and control over the property and invests it in donee. *Swan* v. *Swan's Ex'r*, 136 Va. 496, 117 S.E. 858; *Matthews* v. *Hanson*, 145 Va. 614, 134 S.E. 568; *Payne* v. *Tobacco Trading Corp.*, 179 Va. 156, 18 S.E.2d 281; 24 Am. Jur., Gifts § 21, pp. 738, 739, 740." *Taylor, Adm'x* v. *Smith*, 199 Va. 871, 874, 102 S.E.2d 160, 163.

Tested by the foregoing principles, we find, as a matter of law, that the evidence adduced falls short of being sufficient to establish that the decedent made valid *inter vivos gifts* of the negotiable notes in question. The essential element of delivery is lacking. The decedent instructed Mrs. Phillips, his paid secretary, to return the six unstamped envelopes containing the notes in question to his lock box to be mailed at a later date, and in so doing she acted as her father's agent. No time for the mailing or delivery was fixed by decedent. Mrs. Phillips was never told to mail or deliver the envelopes to the chil-

dren. All she was told was to return the envelopes to decedent's lock box. At one time decedent said to Mrs. Phillips "maybe he'd mail them * * * but then he said no, maybe not today." This clearly indicated that he was not ready to relinquish all dominion and control over the property and invest it in his children. In addition, Mrs. Phillips, who was the only person present with decedent when the transaction took place, testified that she considered the negotiable notes involved "under the control of my father. I wasn't giving it."

The testimony of Mrs. Clarke and Mrs. Bullock concerning conversations had with the decedent in the summer of 1963, after the envelopes had been placed in the lock box, does not show that a delivery of the notes had been made. Their testimony indicates the donor intended to make delivery at some future time.

The complainants rely upon *Snidow* v. *First National Bank,* 178 Va. 239, 16 S.E.2d 385, in support of the validity of the gifts. No hard and fast rule can be laid down as to what will constitute a sufficient delivery to support a gift *inter vivos* for all cases. 9 Mich. Jur., Gifts, § 11, p. 192. A determination of whether such a gift was validly made depends upon the particular facts and circumstances of the case. The facts and circumstances in *Snidow* are dissimilar to those in the case at bar. Hence, it is not controlling.

During the course of trial, an instrument bearing the signature of Mary W. Rust, widow of the decedent, purporting to be a waiver of any right, interest or claim to any part of the property comprising the alleged gifts was introduced in evidence as an exhibit by the defendant Caroline R. Williams. The trial court did not rule upon its validity or effect. Apparently, the trial court was of opinion no ruling on this point was necessary because it had held the gifts were valid. Mrs. Williams assigned error for the failure of the court to find that the waiver executed by Mrs. Rust "was a relinquishment of all right to any portion of the alleged gifts, inuring to the benefit of the other heirs, legatees and devisees." Since there was no ruling on this alleged issue by the court below, the question is not properly before us for a determination.

The decree appealed from is reversed and the case remanded for such further proceedings as may be necessary and proper not inconsistent with the views herein expressed.

*Reversed and remanded.*