# Richmond

## John D. Copenhaver, Administrator, Etc. v. Ruby M. Halsey, Administratrix, Etc.

November 30, 1970.

Record No. 7174.

Present, All the Justices.

*J. Albert Ellett* (*Copenhaver, Ellett & Lawrence*, on brief), for plaintiff in error.

*John J. Beall, Jr.*, for defendant in error.

Carrico, J., delivered the opinion of the court.

This case pits brother's estate against brother's estate in a dispute over collection of promissory notes executed by one brother to the order of the other during their lifetimes.

Conly B. Halsey and J. Kyle Halsey were the two brothers involved in the note transactions. Conly died March 8, 1967, and Kyle died three weeks later. Among Conly's valuable papers were found forty-two promissory notes executed by Kyle to the order of Conly. The notes totaled $19,448.40 in amount. They were executed over a period from January 15, 1960, to April 28, 1966.

Conly's personal representative brought action on the notes against Kyle's estate. Grounds of defense filed on behalf of Kyle's estate asserted that the "notes were gifts" from Conly to Kyle.

The trial court heard the case without a jury. It was stipulated by counsel that seven of the notes were barred by the statute of limitations. As to the remainder, the trial court denied recovery on the ground that the transactions between Conly and Kyle "were in the nature of gifts." The final order of the court awarded judgment in favor of Kyle's estate. We granted Conly's estate a writ of error.

The evidence showed that Conly and Kyle together owned a business known as Virginia Mushroom Company, located at Hollins in Roanoke County. The business was profitable for a number of years after it was established, but in 1960 it began to lose money and continued to be unprofitable until it was closed in 1966.

Conly separately owned another business in the city of Roanoke. That business was successful and Conly had become wealthy. When funds were needed for the operation of the mushroom business after it began to lose money, Conly contributed one-half of the sum required and furnished Kyle the necessary amount for his one-half. He also furnished Kyle funds for his personal use. The promissory notes here in question were given by Kyle to cover the money received from Conly for these purposes.

After Conly's death, the notes were found in a metal box along with stock certificates and other promissory notes. The box was in a metal filing cabinet in Conly's private office in Roanoke, an office to which Kyle had no access. The notes executed by Kyle "were valid on their face and had not been paid."

Conly also left a will. The only provision relating to Kyle was as follows:

"I direct my Trustees to pay out of the net income so much as in their sole discretion may be needed for the additional support of

my brother, J. KYLE HALSEY, of Hollins, Virginia. I further direct my Trustees to allow J. Kyle Halsey to continue operating the mushroom plant so long as this operation remains reasonably profitable. This decision to terminate the operation of the mushroom plant will be left with my Trustees, and in their sole discretion."

Upon these facts, the sole question to be decided is whether the evidence supports the trial court's ruling that the transactions between Conly and Kyle were gifts. In making that ruling, the court stated that it was of opinion "that C. B. Halsey never intended these sums of money as loans to his brother, that on the contrary, he considered the sums of money to be gifts and had accepted the notes to save his brother the embarrassment of living on charity."

█ We are dealing here, then, with the question of gifts *inter vivos*. In *Taylor, Administratrix* v. *Smith*, 199 Va. 871, 874, 102 S.E.2d 160, 163 (1958), the rule with respect to such gifts is stated as follows:

"In order for a gift *inter vivos* to be effective there must be an intention *in praesenti* on the part of the donor to make the gift and there must be such actual or constructive delivery as divests the donor of all dominion and control over the property and invests it in [the] donee. . . ."

We find in the record no evidence that Conly intended to make a gift to Kyle either of the money at the time it was tendered or of the notes at some time subsequent to their execution. There is no statement attributed to Conly, no writing emanating from his pen, and no action on his part to indicate an intention that the transactions were to be considered other than as they appear—loans of money with concurrent promises to repay.

While we find appealing the argument of Kyle's estate that it was not intended that the money be repaid and that use of the notes was designed to conceal the supposedly charitable nature of the transactions, there is nothing in the record to support this theory. In fact, the exact opposite is shown by documentary evidence. The largest single note executed by Kyle to Conley's order was for $2,550.00. That note called for payment of monthly installments of $85.00 each. Those payments were made and were accepted by Conly over a period of three and one-half years. Entries recorded on the back of

the note show that, in all, it was reduced by $1,501.60. This is conclusive evidence that neither Conly nor Kyle considered the transactions to be in the nature of gifts at the time the money was advanced.

Nor is there any evidence that after the lending of the money Conly decided to give the notes themselves to Kyle. To the contrary, it is undisputed that the notes were retained by Conly until his death. That fact is inconsistent with the theory of gift. It not only refutes the idea that a gift was intended, but it is also conclusive proof of the absence of the element of delivery essential to the completion of a valid gift. *Rust* v. *Phillips*, 208 Va. 573, 578-79, 159 S.E.2d 628, 632 (1968).

However, Kyle's estate argues that the clause in Conly's will providing "for the additional support" of Kyle not only evidences an intent "at the moment of execution of each note" to forgive the debts, but further operates to deliver the notes constructively to Kyle by their implied cancellation. While we do not construe the language of the will to supply the necessary donative intent, the argument yet fails for another, equally compelling, reason: If property which is the subject of an intended gift *inter vivos* is not delivered, actually or constructively, during the *lifetime* of the donor, there is no gift. *Gardner* v. *Moore's Adm'r.*, 122 Va. 10, 14, 16, 94 S.E. 162, 163 (1917).

For the reasons stated, we hold that the trial court erred in ruling that the notes were unenforceable, and its judgment will, therefore, be reversed. It was stipulated by counsel that if Conly's estate was entitled to recover, $18,467.84 would be the proper amount of recovery. Final judgment will be entered here in that amount in favor of Conly's estate against Kyle's estate.

*Reversed and final judgment.*