COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Willis
Argued at Alexandria, Virginia


ROBERT H. DEWITT
                                        MEMORANDUM OPINION* BY
v.  Record No. 1636-95-4              JUDGE JAMES W. BENTON, JR.
                                            AUGUST 6, 1996
DONNA D. DEWITT


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                      Quinlan H. Hancock, Judge

            Kathleen O'Brien (Lorraine Nordlund; Margaret
            B. Craig; Fite, O'Brien, & Byrum, LTD., on
            briefs), for appellant.

            Brian D. West (Erika B. Schiller; Sandground,
            Barondess & West, P.C., on brief), for
            appellee.


        Robert H. DeWitt appeals the equitable distribution portion

of a final decree of divorce.  He contends that the trial judge

committed ten errors in decreeing as to the property he and his

wife, Donna D. DeWitt, owned.  We affirm the decree, in part,

reverse, in part, and remand the case to the trial judge.

                                Facts

        Robert H. DeWitt and Donna D. DeWitt married in 1973 shortly

after he was discharged from the U.S. Army.  During the early

years of the marriage the husband enrolled at a university and

obtained undergraduate and dental degrees.  The wife, who was a

recent university graduate, was employed by a federal government

agency, where she continues to work.  Although both parties

_____
        *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

contributed to the family finances, the wife was the major contributor while the husband attended school.

After graduation from dental school in 1980, the husband began his practice with another dentist. The husband opened his own dental practice in 1985. He financed the construction and equipping of his new office with inherited funds, a bank loan, and a loan from his wife's father. The parties separated in 1992 and were divorced by a final decree entered June 23, 1995.

The record contains numerous transcripts and a large number of exhibits. Therefore, we will discuss other facts only as they are pertinent to the issues raised by the husband's appeal.

## Analysis

"'Under familiar principles, we view [the] evidence and all reasonable inferences in the light most favorable to the prevailing party below.'" Pommerenke v. Pommerenke, 7 Va. App. 241, 244, 372 S.E.2d 630, 631 (1988)(citation omitted). We are also guided by the following principle:

> "In reviewing an equitable distribution award on appeal, we recognize that the trial court's job is a difficult one. Accordingly, we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case."

Artis v. Artis, 4 Va. App. 132, 137, 354 S.E.2d 812, 815 (1987). "Unless it appears from the record that the [trial judge] has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence

fails to support the findings of fact underlying his resolution of the conflict in the equities, the . . . equitable distribution award will not be reversed on appeal." Brown v. Brown, 5 Va. App. 238, 244-45, 361 S.E.2d 364, 368 (1987)(citation omitted). Applying these principles, we examine the ten rulings by the trial judge which the husband contests.

## 1. **Money inherited by the husband from his father's estate**

The husband contends that the trial judge erred in finding that the wife was entitled to half of the husband's inheritance from his father. He denies that he gifted the money to her and argues that his inheritance is separate property pursuant to Code § 20-107.3(A)(1)(ii). Citing 20-107.3(A)(3)(d-f), the husband also claims that he retraced his inheritance into the different marital assets and was entitled to recover his separate property.

The evidence proved that after the husband's father died in 1981, the husband received an inheritance of approximately $320,000 over a five year period. The husband deposited all of his inheritance into the couple's various, existing joint accounts. His income and the wife's income were also deposited into those joint accounts. Over the years, the husband used the money in the couple's joint accounts to establish his private dentistry practice and to purchase various retirement accounts. Using funds from joint accounts and other marital funds, they built a new house (the Beresford Court property) in 1982.

In his finding that the husband gifted his inheritance to

the marital estate, the trial judge cited <u>McClanahan v.</u>

<u>McClanahan</u>, 19 Va. App. 399, 451 S.E.2d 691 (1994), and wrote:

> It is undisputed that [the husband] (with one exception) deposited all of these funds into joint accounts with [the wife] and commingled them with marital funds.  She had access to them and could have used them at any time.  Most of this hearing was consumed by [the husband's] attempt to prove that his inheritance was separate property, but at . . . his deposition . . . he testified . . . "The reason for that deposit and not keeping the money separate is because I had trust in the marital relationship.  I thought until death do you part.  I had no idea that she would leave."  And also . . . "Well, you put it into the account and it was an act of the heart?" – Answer:  "Yes."  There is no evidence that there was any agreement between the parties or even an understanding that if [the wife] left the marriage that the funds were not a gift and were to be reclassified.  The Court finds that the words "as an act of the heart are comparable to the legal consideration of 'love and affection,'" and acknowledge an irrevocable gift.

<u>McClanahan</u> was decided under the statute in existence prior to 1990.[1]  The amended statute, as now written and applicable to this case, states that "[w]hen separate property is retitled in the joint names of the parties, the retitled property shall be deemed transmuted to marital property . . . [unless] the property is retraceable by a preponderance of the evidence and was not a gift. . . ."  Code § 20-107.3(A)(3)(f).  In addition, the statute states that "[n]o presumption of gift shall arise . . . where

---

[1]In 1990 the General Assembly added subsection 3 to Code § 20-107.3(A) and made the provisions effective for all divorces filed after July 1, 1990.  The wife filed for divorce in 1994.

. . . newly acquired property is conveyed into joint ownership."

Code § 20-107.3(A)(3)(g). In explaining these provisions, this

Court stated:

> Virginia does not presume a gift simply by virtue of jointly titling or retitling property. A party claiming entitlement to rights and equities in marital property by virtue of an interspousal gift must prove the donative intent of the donor spouse and the nature and extent of the donor's intention.

Lightburn v. Lightburn, 22 Va. App. 612, ___, ___ S.E.2d ___, ___

(1996) (citations omitted). See also Theismann v. Theismann, 22

Va. App. 557, ___, 471 S.E.2d 809, ___ (1996). Thus, the wife

must bear the burden of proving "every fact and circumstance

necessary to constitute a valid gift by clear and convincing

evidence." Rust v. Phillips, 208 Va. 573, 578, 159 S.E.2d 628,

631 (1968).

The trial judge found persuasive the following portion of

the husband's deposition testimony:

> Q    Where did you put those funds?
>
> A    I deposited them into similar accounts that I have established previously that [the wife] and I both used.
>
> The reason for that deposit and not keeping the money separate is because I had trust in the marital relationship. I thought until death do you part. I had no idea that she would leave.
>
> Q    At the time that you put those funds into these joint accounts, was it an act of the heart, because you believed that's as it should be, right?
>
> A    Yes. Subject to that premise, clearly if a person leaves, that would violate the

trust, and then I think it should be retracted.

Q    So it is, in effect, a revoked gift, then?

A    It was not a gift.

Q    Well, you put it into the accounts and it was an act of the heart?

A    Yes.

Q    But it was contingent upon her continuing to be with you or in the marriage, is that right?

A    Yes.  I was advised to do that.

Q    By whom?

A    By an investment counselor who knew nothing about taxes and marital relationships.

Q    When you put these funds into these various accounts as an act of the heart, did you ever in any writing indicate that the titling of the property was contingent upon your continuing in the marital relationship?

A    No.  Actually, I am having a problem with the word "act of the heart," because it has a certain feeling to me, but it may not have the same feeling in the context of law, so I am having a problem with that phrase now.

Q    Okay.  Did you make any writings indicating that the titling of these accounts was contingent upon her continuing in her married relationship?

A    No.


    The wife never presented any evidence of the husband's intent other than this testimony.  Although the husband initially agreed with wife's counsel that he placed the money in the joint

account "as an act of the heart," he also disavowed that phrase because it may have had a legal context that did not describe his motives. He further testified that an investment counsellor advised him to deposit the funds into the joint account. This testimony falls short of clear and convincing evidence of a gift. The husband's testimony that he trusted the relationship would last does not prove a gift occurred when the money was jointly titled.

Prima facie evidence of a gift is not established under this new statute when separate property is jointly titled in both spouses' names. Code § 20-107.3(A)(3)(g). Furthermore, the trial judge improperly placed the burden on the husband to prove the absence of a gift. The lack of any evidence concerning an agreement or understanding does not indicate that the husband intended a gift. Based on the evidence below, we find that the wife did not meet her burden of proving by clear and convincing evidence that the inherited property was a gift.

The trial judge also found that the husband "failed to prove by a preponderance of the evidence that the contributed property is retraceable and was not a gift." The letter opinion does not provide any explanation for the finding that the husband failed to trace his inheritance. The husband's testimony and exhibits prove that the husband invested a total of $61,000 of his inheritance into the purchase, construction and improvement of the Beresford Court residence. Accounting for appreciation, the

husband claimed that $112,700 of the house's $490,000 current value was his separate property. He also testified that he put $6,000 and $8,000 from his inheritance into two individual retirement accounts. At trial, he valued these contributions at $10,000 and $13,000, respectively. The husband testified that he invested $21,435 of his separate property into his Keogh pension and $23,691 into his dental practice. The wife's evidence did not contradict any of these financial figures.

In view of the husband's testimony and the exhibits, the record does not reveal the deficiency the trial judge found in retracing the husband's separate property. Therefore, because the wife failed to prove the jointly titled property was a gift, we reverse that decision and we remand the case to the trial court. After further factual findings, the trial judge shall determine to what extent the husband can retrace his inheritance by a preponderance of the evidence.

2. **Fidelity accounts**

The trial judge identified three Fidelity Accounts (Contra, Spartan, and Puritan) and classified all three as marital property. The husband testified that he inherited $8,084.78 in Fidelity Puritan stock from his grandmother, and therefore, a part of the Puritan account represented separate property. The wife admitted that the husband had inherited Fidelity Puritan stock but testified that the account was closed in 1991. She also testified that three years later the husband opened a second

Fidelity Puritan account with a different account number.  The exhibits confirm that the accounts were closed and opened.  The husband offered no evidence to explain what happened to the money inherited from his grandmother once he closed the first Puritan Account.

Therefore, the husband did not trace by a preponderance of the evidence the separate funds withdrawn from the account in 1991.  Thus, the trial judge properly found the second Puritan account contained marital property only.  The account was opened during the marriage using income that was not shown to be separate property.  Code § 20-107.3(A)(2)(iii).  The evidence also failed to prove that the Spartan and Contra funds were the husband's separate property.

3.  **Rosecroft Place**

The wife testified that she borrowed $45,000 to make the downpayment on her post-marital residence, Rosecroft Place, and made all of the mortgage payments with her separate earnings. Only the $3,000 earnest money deposit represented marital property.  Although the husband contested the wife's claims, "in reviewing an equitable distribution award, we rely heavily on the trial judge's discretion in weighing the particular circumstances of each case."  Aster v. Gross, 7 Va. App. 1, 8, 371 S.E.2d 833, 837 (1988).  No evidence supports the husband's contention that the trial judge abused his discretion in designating the property, except for the $3,000 earnest money deposit, as the

wife's separate property.

4. **Credit union accounts, Shearson-Lehman accounts, and bank accounts.**

(a) The husband contends on appeal that the trial judge erred in finding that three of the four Northwest Federal Credit Union accounts are the separate property of the wife. During his testimony at trial, however, the husband conceded that, "I think after three years of separation, you have to draw a line somewhere. I think at this point [the credit union accounts] are all hers." We will not entertain an appeal of an issue conceded by the party during trial. Kelly v. Commonwealth, 8 Va. App. 359, 367, 382 S.E.2d 270, 274 (1989).

(b) At trial the husband explained the two different Shearson Lehman investment accounts. The first account, known as the "12" account, was titled jointly and was marital property. The husband opened the second account, known as the "10" account, in his name only after the couple's separation. He argues that the "10" account is his separate property.

Although the husband argues that the wife and the trial judge confused the two accounts, the trial judge recognized that two Shearson Lehman accounts existed. The evidence at trial, including the wife's testimony, proved that the husband opened the "10" account immediately after closing a number of joint accounts. The wife's testimony, the husband's testimony, and the documents provide a sufficient basis upon which to prove that the

husband opened the "10" account with funds from other joint accounts. The trial judge did not err in finding that the "10" account was funded from marital property and, thus, was marital property.

(c) We next address three bank checking accounts in the husband's name, identified as the personal, household and office accounts. Both parties agree that the office account constitutes the separate property of the husband. The husband contends that the trial judge erred in classifying his personal and household accounts, opened after the separation, as marital property.

Even though the husband deposited $99,000 of marital funds into the household account, the record supports his testimony that he spent $105,548 on marital or joint expenses. The wife's claim apparently rests solely on the fact that the husband deposited marital assets into the fund. The record proved that any remaining funds in the account were deposited by the husband from his post-separation income. Accordingly, the trial judge erred in classifying the account as marital property.

After the separation the husband deposited $6,000 of his post-separation income into the couple's joint personal account in order to cover a number of outstanding checks. After those checks were paid, he closed the account and transferred the remaining balance, $4,842 to his separate checking account. All other deposits were post-separation earnings. Because the evidence proved that this account contained only post-separation

earnings, the trial judge erred in designating the account marital property.

5. **1992 Mitsubishi**

The parties stipulated the then current value of the Mitsubishi to be $20,800. The purchase price was $32,090. The husband used $12,000 in marital assets (approximately thirty-seven percent of its purchase price) when he purchased the vehicle. In designating $12,000 of the stipulated value as marital property, the trial judge did not distribute pro rata the depreciation of the vehicle. No evidence proved that the marital portion of the vehicle represented more than thirty-seven percent of the current stipulated value. Thus, we reverse the trial judge's valuation and remand for an assessment of the wife's one-half interest in the marital portion of the vehicle.

6. **Investment accounts**

In dividing the Janus Fund, MFS Hi-Yield Bond Fund, and Shearson Lehman "12" account, the trial judge awarded the husband fifty-five percent of their value and the wife forty-five percent. The trial judge reached this decision upon his finding that the husband "has been the one to invest the time and effort into the investment program." The remaining investment accounts were divided equally between the husband and wife.

The husband contends that he should receive fifty-five percent of all of the investment funds because of the time and effort he expended in opening and maintaining the accounts. Upon

this record, we cannot find that the trial judge abused his discretion in apportioning the investment accounts.  <u>Artis</u>, 4 Va. App. at 137, 354 S.E.2d at 815.

7.  **The husband's non-monetary and financial contributions**

The evidence proved that the husband was responsible for the majority of the couple's income.  His private dentistry practice and inheritances produced substantial income.  However, the evidence also proved that the wife worked and produced significant income.  During their marriage, the couple agreed to invest the husband's income and to pay their living expenses, except the mortgage, from the wife's income.

We find no merit in the husband's contention that the trial judge failed to consider his non-monetary contributions and his significant financial contributions.  The trial judge found that "[b]oth parties have made significant contributions to the marriage both monetary and non-monetary."  The record supports that finding.  The record does not support the husband's claim that the trial judge abused his discretion.

8.  **Credit for the pendente lite support**

The trial judge ordered the husband to pay the wife $22,000 for her support during the divorce proceedings.  The trial judge stated that the payment "shall be without prejudice as to the claims of either party."  The husband contends that he should have been given credit for $11,000 in the final distribution of property.

Although no specific mention was made of this money in the equitable distribution findings, the evidence proved that the husband withdrew the money from one of the joint accounts and the wife deposited the money into her savings account. The funds remaining in both accounts were treated as marital property. We cannot conclude solely from these facts that the trial judge abused his discretion in not specifically making an adjustment more favorable to the husband.

9. **Wife's pension plan**

The husband argues that the trial judge erred in not requiring the wife to designate the husband as the irrevocable beneficiary of the survivor benefit plan on the wife's pension. Under Code § 20-107.3(G)(2) the trial judge may order that a spouse be designated an irrevocable beneficiary of a survivor benefit plan.

In the divorce decree, the trial judge denied husband's request by stating that the husband "is entitled to Fifty (50%) percent of the marital share of her pension on an if[,] as[,] and when received basis." The trial judge has discretion in deciding whether to order the designation of the husband as an irrevocable beneficiary. No evidence supports a finding that the trial judge abused his discretion in refusing to order the wife to designate the husband as an irrevocable beneficiary. Id.

10. **Attorney Fees**

"[A]n award of attorney's fees is discretionary with the

[trial judge] after considering the circumstances and equities of the entire case and is reviewable only for an abuse of discretion." <u>Gamer v. Gamer</u>, 16 Va. App. 335, 346, 429 S.E.2d 618, 626 (1993). The trial judge awarded the wife $15,000 in attorney's fees. The husband urges us to award him attorney's fees because the wife refused to stipulate and the trial judge made numerous errors. The trial judge made no finding that the wife acted improperly in refusing to stipulate. We find no basis to conclude that the failure to stipulate was improper. Moreover, the trial judge's decisions are not a basis to determine an award. Accordingly, we find no error.

## Conclusion

For these reasons, we reverse the trial judge's ruling that the husband had the burden of proving no gift and that the evidence proved a gift. Therefore, we remand for reconsideration and findings whether the husband retraced his inheritance by a preponderance of the evidence. Upon further factual findings, the trial court shall distribute these interests to conform with Code § 20-107.3 and this opinion.

We also reverse the trial judge's finding that the household account and personal account were marital property, and we reverse the trial judge's valuation of the wife's interest in the 1992 Mitsubishi. The trial judge shall order the equitable distribution of these assets to conform with this opinion.

<u>Affirmed, in part, reversed, in part, and remanded.</u>