BETTY L. McCLANAHAN

v.

ROY EMORY McCLANAHAN

No. 0658-93-2

Decided December 13, 1994

COUNSEL

Francis McQ. Lawrence (Elizabeth Morrison St. John, Bowling & Lawrence, on briefs), for appellant.

John K. Taggart, III (Patricia D. McGraw; Tremblay & Smith, on brief), for appellee.

OPINION

**BAKER, J.**—Betty L. McClanahan (wife) appeals from the equitable distribution provision of a decree entered by the Circuit Court of Albemarle County (trial court) on July 21, 1992 that granted Roy Emory McClanahan (husband) a divorce. Wife contends the trial court erred when it classified, as husband's separate property, the real estate used by husband to purchase land upon which the marital home was established and gave husband a monetary award of $773,900 based upon his contribution to the acquisition of that property.

In all divorce cases in which equitable distribution issues are presented, fashioning the decree is left largely to the discretion of the trial court as empowered and instructed by Code § 20-107.3. *Srinivasan v. Srinivasan*, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990).

Unless it appears from the record that the chancellor has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities, the chancellor's equitable distribution award will not be reversed on appeal.

*Smoot v. Smoot*, 233 Va. 435, 443, 357 S.E.2d 728, 732 (1987).

Husband and wife married in 1958. Three children were born of the marriage, all of whom were over the age of majority at the hearing date. In this matter, three properties are at issue, known respectively as (1) the Covesville Orchard and cold storage facility, (2) the Covelawn Farm property, and (3) the Ferncliff Motors property. Prior to their marriage, husband owned a one-third interest in a tract of orchard land he acquired for $2,833. From the date of their marriage until 1965, the parties lived "in town" where wife worked part-time as a nurse, cared for the children born of the marriage, and husband worked on his father's orchard land at Covesville. Although household duties and caring for their children were wife's primary contributions to the marriage, over a period of time, she assisted in the orchard operation and worked at the post office. Husband continued to work full time for somewhat meager wages in the family's orchard business until it was sold in 1979.

In 1965, husband and wife moved to Covelawn Farm, then owned by husband's parents. Between 1966 and 1975, by several exchanges of real estate made by deeds that appear to be deeds of bargain and sale, husband acquired all the Covesville Orchard land and a one-half interest in the cold storage facility. The deeds transferring these properties titled the land in husband's sole name.[1] A family bookkeeper testified that, to the best of her knowledge, no consideration passed for the exchanges; however, none of those deeds reflected that the transfers were gifts. The grantor's tax paid to the clerk when the deeds were recorded indicates that those properties were transferred for a consideration of value.

By deed dated June 1, 1979, husband's parents conveyed Covelawn to husband and wife. The granting clause provided:

---

[1] At trial, husband contended that these transfers were gifts to him.

That for and in consideration of the after described conveyance, the parties of the first part [husband's parents] here by GRANT, BARGAIN, SELL and CONVEY with GENERAL WARRANTY and ENGLISH COVENANTS OF TITLE unto Roy Emory McClanahan and Betty L. McClanahan, husband and wife, as tenants by the entirety with full rights of survivorship and not as tenants in common . . . known as "Covelawn."

The consideration referred to as "the after described conveyance" was the bargain and sale to husband's parents as tenants in common of a one-half undivided interest in the Covesville Orchard. Notations of clerk's recording fees in the deed show the value of the consideration paid for Covelawn to have been $548,400. Three days after husband's parents acquired the one-half interest in the Covesville Orchard, the entire property was sold by husband and wife and husband's parents for $900,000 to McClanahan & Company. Husband and his father financed the sale by deferred purchase money bonds. Husband received bonds valued at $450,000 for his one-half interest and his father received a like amount.[2] Only $195,000 in bonds, payable to husband as a part of his share of the sale of the Covesville orchard, remained unpaid at the time of the hearing.

From 1979 to the date of the hearing, the family's income consisted of payments received on the bonds, wife's part-time earnings at the post office, and rental income from the parties' joint investment properties. Before the 1979 sale, husband worked long hours on the orchard property, as second-in-command to his father, receiving near minimum wage. Profits from the orchard operation were reinvested in the orchard business. Wife was not an employee but worked part-time, assisted in the business, and cared for their three children.

In 1983, husband purchased the Ferncliff Motors property for $79,500. It was titled in his sole name and used for an auto parts business. Husband testified that the purchase price came from his separate funds. In March 1989, husband sold the land and business for $268,000. It was partially seller-financed by a negatively

---

[2] The cold storage property was also sold to McClanahan & Company on the same date for $900,000. At the time of the hearing, all the proceeds received by husband for the latter sale had been expended for marital purposes.

amortized note for $168,000, valued at $173,170 at the hearing date. Husband received a $100,000 down payment and payments on the note of $36,000 prior to the hearing, while wife received none of the proceeds. Husband claims the down payment and proceeds from the notes were used solely to pay the parties' joint income taxes.

In a letter opinion, the trial court "identified as marital property" Covelawn valued at $872,400 and "real estate purchased after sale of orchard" at $164,700. The decree from which this appeal emanates declared those properties to be marital.

At trial, husband testified that his parents intended to make a gift of the Covelawn property to husband and that it was his "choice" to have the deed written as it, in fact, was executed. Husband further testified, "It came from my heart, the way I felt it should be done."

The trial court held that the monetary award should include the $548,400 value of the one-half interest in the Covesville Orchard that husband conveyed to his parents in exchange for Covelawn. In addition, the trial court held that husband used $85,500 of his separate funds to purchase additional property that he titled in the parties' joint names. The $773,900 award included reimbursement for that $85,500. The remaining $70,000 represented reimbursement for cash held to be the separate property of husband which wife removed from the family safe and used for her private purposes.

The judgment of the trial court sitting in equity hearing a matter *ore tenus* is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it. *Stainback v. Stainback*, 11 Va. App. 13, 19, 396 S.E.2d 686, 690 (1990); *Frye v. Spotte*, 4 Va. App. 530, 537, 359 S.E.2d 315, 319-20 (1987). At the time the parties separated and when the hearings were held, the parties' property could not be divided into part marital and part separate. *See Smoot*, 233 Va. at 439, 357 S.E.2d at 730.[3] However, as a tool to facilitate an equitable distribution of marital property, the trial court was authorized to

---

[3] The amendment to Code § 20-107.3 permitting division in "equitable" shares, thus changing *Smoot* to that extent, was enacted effective July 1, 1991. The trial judge specifically noted that his findings were based upon the statutes in effect prior to the amendment.

weigh the equities of the parties and make a monetary award. *Id.* at 441, 357 S.E.2d at 731. A monetary award is a device generally used by the trial court to adjust inequities caused by transmutation. *Brown v. Brown*, 5 Va. App. 238, 243, 361 S.E.2d 364, 367 (1987). In all the cases that a monetary award issue has come before this Court, ownership has come either from transmutation or as a result of a down payment with the balance paid from earnings or otherwise, over a period of years. Here, the entire consideration for Covelawn was paid at the time it was placed in the names of both husband and wife as joint tenants with full rights of survivorship.

Husband testified that he was the one who caused the property to be titled as it was "as a matter of heart." Those words are comparable to the legal consideration of "love and affection" and, as stated, acknowledge an irrevocable gift. *See Enright v. Bannister*, 195 Va. 76, 81, 77 S.E.2d 377, 380 (1953). This was not a partial gift but was complete as to the entire property when made. Nothing in this record discloses a reservation by husband that would permit him to revoke the gift, and Code § 20-107.3(D) does not authorize the trial court to revoke that irrevocable gift by entry of a monetary award based upon husband's contribution to that gift.

Before a monetary award is made, the trial court must examine the equities, rights, and interests of each party in the marital property and determine whether a monetary award is appropriate. *See* Code § 20-107.3(D). The rights, equities, and interests acquired when one spouse causes property to be transferred and titled in the name of the other must be determined in light of the conditions existing at the time of the acquisition. *See Floyd v. Floyd*, 17 Va. App. 222, 226-27, 436 S.E.2d 457, 460 (1993).

It is clear that wife obtained the same interest in Covelawn by an unconditional, irrevocable gift made to her by husband ten years prior to the date of their separation. That interest became equal in every respect to the interest owned by husband. Until altered by the dissolution of their marriage, the parties possessed Covelawn as tenants by the entirety with the right of survivorship. If either party had died prior to the entry of the divorce decree, the other would have become sole owner of the whole.

■ The Covelawn gift, made as a "matter of heart," was as complete and irrevocable as the ring given at the marriage ceremony and, like that ring, under the facts in this record, it may not be reclaimed in a divorce proceeding. The fact that husband acquired a like interest in Covelawn only emphasized that, "the equities and the rights and interests of each party in [that] marital property" was equal. Code § 20-107.3(D). *See Alphin v. Alphin,* 15 Va. App. 395, 403, 424 S.E.2d 572, 576-77 (1992). Code § 20-107.3(D) empowers the trial court to make monetary awards; however, it specifically limits the trial court's discretion in making the award by providing that the award must be "based upon (i) the equities and the rights and interests of each party in the marital property, and (ii) the factors listed in subsection E." Because those equities, rights, and interests were equal, it was inequitable to make a monetary award that ordered a return of the gift to the extent of $548,400, the value of husband's interest in the Covesville Orchard conveyed to his parents.

Code § 20-107.3(E)(10) requires that any equitable distribution be fair and equitable. We find that under the facts of this case, the legislature did not authorize courts to revoke an unconditional, irrevocable gift made by husband to wife; therefore, the trial court misapplied Code § 20-107.3. Because under these facts, the evidence fails to support the award, husband may not successfully claim a monetary award based upon a gift he made at a time when the marriage was more serene.

Accordingly, we reverse and remand this case to the trial court with the direction that, if it be advised, a monetary award be entered, a review of the source of the funds invested in the other property and monies taken from the safe be made, and the decree not be inconsistent with this opinion.

*Reversed and remanded.*

Barrow, J., and Bray, J., concurred.