471 S.E.2d 809

**Joseph R. THEISMANN**

v.

**Jeanne C. THEISMANN.**

**Record No. 1092–95–4.**

Court of Appeals of Virginia,
Alexandria.

June 18, 1996.

Annunziata, J., filed opinion concurring in part, and dissenting in part.

Michael A. Ward, Alexandria (Gannon, Cottrell & Ward, P.C., on briefs), for appellant.

Mark Barondess, Vienna (Brian D. West, Vienna; Donna J. Kraus, Arlington; Sandground, Barondess & West, P.C., Vienna, on brief), for appellee.

Before MOON, C.J., ANNUNZIATA, J., and DUFF, Senior Judge.

MOON, Chief Judge.

Joseph R. Theismann and Jeanne C. Theismann appeal from the final decree of divorce entered on May 12, 1995. Mr. Theismann claims that the trial court erred in making a monetary award of $950,000, in awarding periodic support and maintenance, in failing to impute income to Mrs. Theismann, and in awarding attorney's fees and costs to Mrs. Theismann. Mrs. Theismann claims that the trial court awarded her insufficient spousal support and maintenance, erred in determining the scope of marital property, and erred in its determi-

nation of Mr. Theismann's waste of marital assets. We affirm the judgment of the trial court.

The parties married on May 26, 1991. At that time, Mr. Theismann was a sportscaster for ESPN, with an ownership interest in several restaurants and additional income from speaking engagements. Mrs. Theismann was a sportswriter for a Japanese newspaper, having previously been employed as a weather forecaster. No children were born of the marriage.

Prior to the marriage, Mr. Theismann had assets worth over $4 million. Mrs. Theismann's pre-marital assets consisted primarily of a certificate of deposit worth $40,000. She used approximately half of this amount to purchase an automobile for Mr. Theismann and retained the rest as separate property.

Virtually all of the monetary contributions to the marriage came from Mr. Theismann. Mrs. Theismann left her job in Japan so that she could marry Mr. Theismann, and her contributions to the marriage were primarily non-monetary. She engaged in improvement projects in the home, performed a variety of household activities, and also served as a hostess and traveling companion for her husband.

During the marriage, the parties lived on a farm near Leesburg. Shortly after the marriage, Mr. Theismann directed that the farm be deeded jointly to himself and his wife, as tenants by the entireties. In January 1993, he placed Mrs. Theismann's name on his account with Goldman Sachs & Co. Shortly thereafter Mr. Theismann created an account with Merrill Lynch that he also placed in the couple's joint names. The trial court found that in all three cases, the retitling of the property constituted a gift. At the time of the evidentiary hearing, the Goldman Sachs account was worth $842,326, the Merrill Lynch account was worth $72,111, and the farm in Leesburg was worth $1,645,000, with equity of $849,933.

In April 1993, Mr. Theismann began an adulterous affair. The parties separated in January 1994 after Mrs. Theismann first learned of the affair. On April 1, 1994, Mrs. Theismann filed for divorce on the ground of adultery. After a five-day

trial, the circuit court filed a letter opinion on January 26, 1995 in which it found that Mrs. Theismann was entitled to a divorce based upon adultery. The court listed marital property worth over $2.5 million, including the two accounts and the farm discussed above. This amount also included a Central Fidelity account worth $69,948 and a First Union account with equity of $201,537, which Mrs. Theismann claimed were created with funds from the two "gifted" accounts. The court found that Mrs. Theismann was entitled to a monetary award of $130,000, to be paid upon recordation of the decree transferring the jointly titled marital property to Mr. Theismann. The trial court awarded Mrs. Theismann spousal support and maintenance of $3500 per month, with no income imputed to Mrs. Theismann, and ordered Mr. Theismann to pay Mrs. Theismann's counsel fees.

On February 23, 1995, Mrs. Theismann filed a motion to reconsider, arguing *inter alia* that the court had erred in its consideration of the marital gifts. The court also decided to reconsider the monetary award on its own motion. After extensive briefing and argument by the parties, the court issued a second letter opinion increasing the monetary award to $950,000 on the ground that the previous award did not give due weight to the marital gifts. The court did not change the spousal support award. Mr. Theismann's motion for reconsideration was denied, and the final decree was entered on May 12, 1995. These appeals followed.

## EQUITABLE DISTRIBUTION

■ "The goal of equitable distribution is to adjust the property interests of the spouses fairly and equitably." *Booth v. Booth,* 7 Va.App. 22, 27, 371 S.E.2d 569, 572 (1988). In making an equitable distribution, the court must classify the property, assign a value, and then distribute the property to the parties, taking into consideration the factors listed in Code § 20–107.3(E). *Alphin v. Alphin,* 15 Va.App. 395, 403, 424 S.E.2d 572, 576 (1992). While the division or transfer of marital property and the amount of any monetary award are matters committed to the sound discretion of the trial court,

"any division or award must be based on the parties' equities, rights and interests in the property." *Id.* at 403, 424 S.E.2d at 577; *see also Keyser v. Keyser*, 7 Va.App. 405, 410, 374 S.E.2d 698, 701 (1988); Code § 20–107.3(D).

Mr. Theismann contends that the trial court abused its discretion in making even the original marital award of $130,000, because the marriage was of short duration and Mr. Theismann made the vast majority of financial contributions to the marriage. We disagree. Duration of the marriage and the parties' monetary contributions are only two of the factors the court must consider in making a monetary award. Monetary contributions do not necessarily carry greater weight than nonmonetary contributions. *See L.C.S. v. S.A.S.*, 19 Va.App. 709, 721, 453 S.E.2d 580, 586 (1995). The trial judge thoroughly examined the evidence and considered the required factors in determining the award. His decision that Mrs. Theismann was entitled to a significant marital award was not an abuse of discretion.

Mr. Theismann also argues that in increasing the award to $950,000, the trial court erred in its treatment of the property that Mrs. Theismann claims was gifted to her. All three items of property were retitled in the parties' joint names by Mr. Theismann. Under Code § 20–107.3, "when separate property is retitled in the joint names of the parties, the retitled property shall be deemed transmuted to marital property, . . . [unless] it is retraceable by a preponderance of the evidence and was not a gift." Code § 20–107.3(A)(3)(f). No presumption of gift arises from the fact that the property was retitled. Code § 20–107.3(A)(3)(g).

Because the ordinary presumptions pertaining to interspousal gifts do not apply,[1] Mrs. Theismann had to prove

---

1. Ordinarily, when one spouse provides all of the funds for property that is conveyed to the couple jointly, it is presumed that the provider of funds has made a gift to the other spouse of an undivided one-half interest in the property. *See Sundin v. Klein*, 221 Va. 232, 269 S.E.2d 787 (1980). Also, spouses' joint accounts are presumed to belong to them equally even where their contributions to the account were

the existence of a gift. *Rust v. Phillips*, 208 Va. 573, 578, 159 S.E.2d 628, 631 (1968). The three elements of a gift are: (1) intention on the part of the donor to make a gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee. 9A *Michie's Jurisprudence*, Gifts § 8 (1991). Here, the only element disputed by the parties is the element of Mr. Theismann's intent.

The evidence on the issue of intent was in conflict. Mr. Theismann denied the intention to make a gift. However, he acknowledged that he knew that he had made his wife an owner of the accounts and that he wanted her to share equally in the home. He placed no reservation on the transfers of title permitting him to reclaim the property upon divorce or any other circumstance. Mrs. Theismann presented evidence that Mr. Theismann memorialized the transfers of title in cards that he sent to her, which indicated that the Leesburg farm was now "our home" and that the money was hers to spend. Mrs. Theismann testified that Mr. Theismann bragged that he had made her a "millionaire." Viewing the evidence in the light most favorable to Mrs. Theismann, as we must, we hold that the trial court was not plainly wrong in concluding that Mr. Theismann intended to make a gift of the property to his wife.[2]

Mr. Theismann further argues that the trial court erroneously construed *McClanahan v. McClanahan*, 19 Va.

---

unequal, unless there is clear and convincing evidence of different intent. Code § 6.1–125.3(A); *see Lewis v. House*, 232 Va. 28, 348 S.E.2d 217 (1986).

2. Mr. Theismann argues that in order to prove intent to make a gift, Mrs. Theismann should have to prove not only that he intended to make a gift of a legal interest in the property, but also that he intended to surrender his claim to the benefits the nonmarital status of the property would afford him in the event of divorce. *See Watson v. Watson*, 77 Md.App. 622, 551 A.2d 505 (Ct.Spec.1989). Code § 20–107.3(A)(3)(f) does not provide that an interspousal gift constitutes marital property in the event of divorce only if the parties affirmatively so contemplated at the time the gift was made. The rule proposed by Mr. Theismann would permit donor spouses to disavow their gifts in practically all cases, and we decline to adopt it.

App. 399, 451 S.E.2d 691 (1994), to require that the gifted assets be divided between the parties fifty/fifty, in effect creating a special class of "gifted" marital property that does not exist in the statute. This argument misinterprets the trial court's decision.[3] In its first opinion, the court found that Mr. Theismann made three gifts to Mrs. Theismann. In the second, the court increased the marital award on the basis that it had not given due weight to the gifts, citing *McClana-han* for the proposition that it would be inequitable to permit Mr. Theismann to revoke, through the divorce, an unconditional gift. The trial court did not then make an automatic fifty/fifty split of the gifted property, but considered "the equities and rights and interests of the parties in the marital property" under Code § 20–107.3(D) and also the statutory factors under Code § 20–107.3(E).[4]

---

**3.** Indeed, the trial court did not award Mrs. Theismann an exact fifty percent interest in the gifted assets, as Mr. Theismann implies. One-half of the value of these assets, including the two accounts that the trial court traced to the original gifted accounts, was $1.018 million at the time of the hearing.

**4.** The dissent concludes that the trial judge disregarded the Code § 20–107.3(E) factors in awarding a portion of the gifted assets to Mrs. Theismann, and also erred in taking the parties' equities, rights, and interests under Code § 20–107.3(D) into account in determining the amount of the award. We respectfully disagree. The trial judge stated that he considered these two provisions of the statute together, viewing his analysis of the Code § 20–107.3(E) factors through an "overlay" of the equities, rights, and interests of the parties under Code § 20–107.3(D). This approach is consistent with both the statute and the cases interpreting it.

Under Code § 20–107.3(D) the trial court has the power to grant a monetary award based upon (i) the equities and the rights and interests of each party in the marital property, and (ii) the factors listed in subsection E. The court examines the equities, rights, and interests of the parties in order to determine whether a monetary award is appropriate. *See McClanahan*, 19 Va.App. at 404, 451 S.E.2d at 694. The court determines the amount of the award after consideration of the Code § 20–107.3(E) factors. *See Brinkley v. Brinkley*, 5 Va.App. 132, 136–37, 361 S.E.2d 139, 140 (1987). However, the parties' equities, rights, and interests do not become irrelevant at that point in the process and are properly taken into account by the trial court in fashioning the award. Indeed, "[t]he function of the [trial court] is to arrive at a fair and equitable monetary award *based on the equities and*

Relying on *McClanahan*, the trial court gave great weight to the gifted status of the property in determining the amount of the award. *McClanahan* establishes the principle that the equities, rights, and interests of spouses in an interspousal gift of jointly titled property are equal under Code § 20–107.3(D), and that the court must give careful consideration to the gifted status of marital property in order to fashion a fair and equitable award. *Id.* at 405, 451 S.E.2d at 694. The trial court did not err in relying on *McClanahan* to award Mrs. Theismann a substantial proportion of the gifted property and little or none of the value of the other marital property.

▆ We agree with the dissent that where warranted by the evidence and application of the Code § 20–107.3(E) factors, all or most of the gifted property's value could properly be awarded to the donor spouse. *McClanahan*, while it requires careful consideration of the gifted status of marital property, does not compel a 50/50 distribution of such property. The trial judge recognized this, stating during the argument on reconsideration that in the equitable distribution context, the donee is not necessarily entitled to fifty percent of the property. In this case, however, the trial court's decision to make a relatively equal distribution of the gifted property was consistent with Code §§ 20–107.3(D) and (E) and therefore did not constitute an abuse of discretion.

The trial court took the gifted status of the property into account primarily under Code § 20–107.3(D), which requires the monetary award to be based on the "equities and the rights and interests" of each party in the property. *See* note 4, *supra.* We note that the gifted status of the property is also relevant to several of the factors in subsection (E), in particular Code § 20–107.3(E)(6) and (10), which require con-

---

the rights and interests of each party in the marital property." *See Gottlieb v. Gottlieb,* 19 Va.App. 77, 95, 448 S.E.2d 666, 677 (1994) (quoting *Mitchell v. Mitchell,* 4 Va.App. 113, 118, 355 S.E.2d 18, 21 (1987)) (emphasis added). *See also* Code § 20–107.3(B) (the parties' rights and interests in the marital property do not attach to the legal title, but may be used as "a consideration in determining a monetary award, if any . . .").

sideration of "[h]ow and when specific items of such marital property were acquired" and "[s]uch other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award."

In its first letter opinion, the trial court found that Mrs. Theismann had not shown that Mr. Theismann's adultery had an economic impact on the marital property, and therefore under *Aster v. Gross,* 7 Va.App. 1, 371 S.E.2d 833 (1988), fault was irrelevant to the equitable distribution. In the second letter opinion, the trial court stated that Mr. Theismann was seeking to revoke the gifts "[b]y reason of his own marital fault," and cited *Aster* in support of its decision to adjust the monetary award. Mr. Theismann claims that the trial court erred in taking fault into account in its decision.

In *Aster,* we held that fault could not be used to punish the offending spouse but instead should be considered in terms of its economic impact on the marital estate. *Aster,* 7 Va.App. at 5–6, 371 S.E.2d at 836–37. In *O'Loughlin v. O'Loughlin,* 20 Va.App. 522, 458 S.E.2d 323 (1995), we held that the negative impact of fault on non-economic aspects of the marriage could also be considered in determining a monetary award. We reaffirmed our holding in *Aster* that fault could not be used as a "wild card" to justify an otherwise arbitrary award. *Id.* at 528, 458 S.E.2d at 326.

The trial court modified the monetary award because it had initially failed to give due consideration to Mrs. Theismann's interest in the gifted property. We do not believe that the trial court intended to rely on Mr. Theismann's fault in order to increase the monetary award. In referring to Mr. Theismann's marital fault and citing *Aster,* the trial court intended to emphasize that it had failed to give due consideration to the interest Mrs. Theismann had in the gifted property before the marriage ended due to Mr. Theismann's adultery. The trial court was entitled, and indeed required, to consider Mrs. Theismann's equities, rights, and interests in the gifted property in order to fashion an equitable monetary award. Mr.

Theismann is not entitled to reversal based on improper consideration of fault by the trial court.

Mrs. Theismann claims that the court erred in its designation of certain assets as separate rather than marital. These assets include the Devil's Inn stock, World Tech stock, the "Tuti–Pazzi note," and funds in an account belonging to JRT Associates, Mr. Theismann's S Corporation.[5] The evidence on the status of these assets was in conflict. The court considered the evidence and testimony presented by the parties, as well as the applicable statutory provisions. The trial court's designation of this property as separate was not clearly erroneous.

■■■■ The court did not err in failing to award Mrs. Theismann a percentage of all the assets it deemed marital. The statute does not require that a spouse be awarded a percentage of all marital properties. Instead, the trial court must make a fair and equitable monetary award after consideration of the statutory factors. Consideration of the factors as applied to various assets can justify different equities in each of those assets. *Artis v. Artis*, 10 Va.App. 356, 362, 392 S.E.2d 504, 507 (1990). This is certainly the case here. The trial court's determination of a marital award that did not include a portion of all items of marital property did not constitute an abuse of discretion. *See Blank v. Blank*, 10 Va.App. 1, 9, 389 S.E.2d 723, 727 (1990).

## WASTE OF MARITAL ASSETS

■■■■ Mrs. Theismann also argues that the court erred in its consideration of waste of marital assets, thus reducing the size of the marital estate. "Waste" in this context is defined as the "dissipation of marital funds in anticipation of divorce or separation for a purpose unrelated to the marriage

---

**5.** Mrs. Theismann also claims that the court failed to identify as marital $174,090 in earnings from JRT Associates and $28,558.37 received for refinancing the marital home. These funds were deposited in a First Union Bank Account. However, the trial court traced these funds to First Union Account 219073, which the court designated as marital.

and in derogation of the marital relationship at a time when the marriage is in jeopardy." *Booth v. Booth,* 7 Va.App. 22, 27, 371 S.E.2d 569, 572 (1988). "Once the aggrieved spouse shows that marital funds were either withdrawn or used after the breakdown, the burden rests with the party charged with dissipation to prove that the money was spent for a proper purpose." *Clements v. Clements,* 10 Va.App. 580, 586, 397 S.E.2d 257, 261 (1990). "When waste has occurred, the court must include the wasted assets as marital property and must consider the waste as a factor in determining the monetary award." *Booth,* 7 Va.App. at 28–29, 371 S.E.2d at 573. Expenditures for living expenses and counsel fees in the divorce do not constitute waste. *Alphin,* 15 Va.App. at 403, 424 S.E.2d at 576; *Booth,* 7 Va.App. at 28, 371 S.E.2d at 573.

There is no dispute that near the time of the separation, Mr. Theismann withdrew funds from marital accounts and placed them in separate accounts. In its first letter opinion, the court noted that it had identified as marital the joint assets that Mr. Theismann had retitled in his own name. The court traced and identified as marital at least six assets, including two accounts with First Union, a Central Fidelity account and stock purchases in the Arkansas Bank, Diasense, and Baker Video. The court also stated that to the extent Mr. Theismann had dissipated marital assets, they would be included in the marital estate. The court listed only $37,500 as dissipated, an amount apparently representing three months of alimony payments to Mr. Theismann's first wife. The court did not list or discuss any other elements of the waste claim.

In her brief, Mrs. Theismann claims that at least $680,039 of marital assets were wasted. At oral argument, counsel for Mrs. Theismann was unable to identify items of waste that total $680,039. Mrs. Theismann's expert witness prepared a summary of dissipation of assets that listed $516,552 in waste.[6]

6. In her brief, Mrs. Theismann claims waste of $211,918 in mortgage payments for the Leesburg farm. These payments are not included in the expert's summary. These payments reduced the debt against a

A significant portion of this amount was ruled on by the trial court in the asset classification process. The court's classifications were not clearly erroneous. Furthermore, the expert admitted that he had not considered other money earned by Mr. Theismann after separation that flowed into the marital accounts from which the waste allegedly took place.

Mrs. Theismann had the burden of showing by the record that reversible error was committed. *Lutes v. Alexander,* 14 Va.App. 1075, 1077, 421 S.E.2d 857, 859 (1992). Her brief does not fully develop her argument as to waste and does not provide adequate citations to the record in support of her claims. Therefore, we find that the trial court did not commit reversible error regarding the issue of waste. *See Buchanan v. Buchanan,* 14 Va.App. 53, 56, 415 S.E.2d 237, 239 (1992).

## SPOUSAL SUPPORT

 The determination of whether a spouse is entitled to support and of the amount of that support is a matter committed to the sound discretion of the trial court. *Gottlieb v. Gottlieb,* 19 Va.App. 77, 84, 448 S.E.2d 666, 671 (1994). "When the record discloses that the trial court considered all of the statutory factors, the court's ruling will not be disturbed on appeal" absent a clear abuse of discretion. *Gamble v. Gamble,* 14 Va.App. 558, 574, 421 S.E.2d 635, 644 (1992).

 The trial court did not err in determining that Mrs. Theismann is entitled to spousal support. In considering whether to award support, the court must take into account the factors that contributed to dissolution of the marriage, including adultery. Mr. Theismann's adultery, which the trial court found led to dissolution of the marriage, supports the threshold determination under Code § 20–107.1 that Mrs. Theismann is entitled to spousal support. *See Gamble,* 14 Va.App. at 574, 421 S.E.2d at 645.

---

marital asset and thus could not be deemed waste, as counsel for Mrs. Theismann conceded at oral argument.

▇ The trial court's award of $3500 per month in support is considerably less than the $24,668 requested. Mrs. Theismann argues that the award is inadequate because it will not allow her to maintain the standard of living she ·enjoyed during the marriage and because Mr. Theismann can afford to pay more. While the standard of living established during the marriage and the financial resources of the parties are two factors the court must consider in making an award, *see* Code § 20–107.1, there are other factors as well. These factors include the duration of the marriage, the age, health, and earning capacity of the parties, and the size of the marital award. The court must consider all of these factors, and the failure to do so constitutes reversible error. *Woolley v. Woolley,* 3 Va.App. 337, 344, 349 S.E.2d 422, 426 (1986).

The court considered all of the statutory factors as well as Mrs. Theismann's claimed monthly expenses, which the court described as "stratospheric". Based on all of the factors, it found that an award of $3500 per month would permit Mrs. Theismann to address her everyday needs. This determination did not constitute an abuse of discretion.

▇ The trial court did not err in failing to impute income to Mrs. Theismann. In deciding whether to impute income, the court "must look to current circumstances and what the circumstances will be 'within the immediate or reasonably foreseeable future.' " *Srinivasan v. Srinivasan,* 10 Va.App. 728, 735, 396 S.E.2d 675, 679 (1990). The trial court found that although Mrs. Theismann would be able to reenter the workforce at a later time, her absence from the workforce and the "emotional drain" resulting from the breakup of her marriage made it inappropriate to impute income at this time. Moreover, the evidence showed that Mrs. Theismann had made preliminary efforts at reentering the workforce and that she had not refused any offers of employment. Accordingly, the trial court's decision did not constitute an abuse of discretion.

▇ Finally, Mr. Theismann argues that the trial court erred in not reducing or eliminating the spousal support

award after it increased the monetary award. As noted, the trial court must take the monetary award into account when it decides the amount of spousal support. Code § 20–107.1. When the monetary award changes, the amount of spousal support must also be reconsidered. *See Mitchell v. Mitchell,* 4 Va.App. 113, 121, 355 S.E.2d 18, 23 (1987). Here, the trial judge stated that he had reconsidered the spousal support issue after he adjusted the monetary award, and arrived at the same result. Because Mr. Theismann's income was $1,200,000 per year, an award of $42,000 per year in spousal support did not constitute an abuse of discretion under the facts and circumstances of the case.

## ATTORNEY'S FEES

The award of counsel fees is a matter committed to the sound discretion of the trial court. *L.C.S. v. S.A.S.,* 19 Va.App. at 721, 453 S.E.2d at 587. Where the husband is in a clearly superior financial position and his infidelity precipitated dissolution of the marriage, the trial court may properly award attorney's fees to the wife. *Poliquin v. Poliquin,* 12 Va.App. 676, 682, 406 S.E.2d 401, 405 (1991). Based on the wife's statement of counsel fees, the trial court was in a position to determine the reasonableness of those fees. *Id.* The trial court's decision to award the fees did not constitute an abuse of discretion.

The judgment of the trial court is affirmed.

*Affirmed.*

ANNUNZIATA, Judge, concurring in part, and dissenting in part.

I concur in the opinion of the majority except with respect to the correctness of the trial court's final equitable distribution of the "gifted" assets. On that point, I respectfully dissent.

In its initial opinion, issued January 26, 1995, the trial court found that the husband had made a gift during the marriage to the wife of an interest in certain jointly titled property.

The court properly classified this "gifted" property as marital. *See* Code § 20–107.3(A)(3)(d), (e), and .(f). After considering the parties' rights and interests in the marital property, *see* Code § 20–107.3(D), and the statutory factors governing distribution, *see* Code § 20–107.3(E), the court found that wife was entitled to a monetary award in the amount of $130,000. The award represented approximately 5% of the value of the entire marital estate and was based on the value of both "gifted" and "non-gifted" property.[7]

The court, on its own motion, decided to reconsider its award, having reached the conclusion that it did not give "due weight" to the property husband "gifted" to wife. Wife also filed a motion to reconsider the court's equitable distribution award, contending that the award, in effect, "revoked" husband's gift of property to her. Wife cited *McClanahan v. McClanahan*, 19 Va.App. 399, 451 S.E.2d 691 (1994), in support of her position that her interest in the "gifted" property was equal to that of husband and that the gift could not be "reclaimed" by him in the divorce proceeding.

Upon reconsideration, the court reversed its earlier decision, citing *Aster v. Gross*, 7 Va.App. 1, 371 S.E.2d 833 (1988), and *McClanahan.* The trial court found that,

> ... Mr. Theismann gifted to Mrs. Theismann a joint interest in both real and personal property. The Court is of the opinion that it did not give due weight to these gifts in its prior decision.
>
> By reasons of his own marital fault, Mr. Theismann now seeks to have the court *revoke*, to a significant degree, *what were* unconditional, *irrevocable* gifts when made during the marriage. There is *nothing fair, equitable or reasonable* in such an outcome.

(Emphasis added.) Thus, having considered the interest given by gift to be irrevocable, the court amended its equitable distribution award to wife, increasing it to $950,000.

---

7. The value of the gifted property alone was approximately $2.036 million.

The amended award was subsequently the subject of husband's motion to reconsider. In denying the motion to reconsider, the trial judge made further comments from the bench on the analysis he had applied in amending the award:

> I went back over all of those [§ 20.107.3] factors [governing distribution], and know [counsel for wife] was very unhappy with my analysis of the factors. *I still am firmly convinced that my analysis of those factors is correct.* So, *then* I went back to this *McClanahan* case again and tried to see where this case fit into *McClanahan* . . . . So where do these gifts fit in?
>
> And I really think where *McClanahan* is coming from is an area that really has been unexplored, at least in reported decisions, and that is the *first* part of the considerations *that go into fixing an equitable distribution award,* because the statute says under [§ 20–107.3(D) ] that *the award is based on, one, the equities and the rights and interests of each party in the marital property.* And that is the provision that *McClanahan* really focused on.
>
> So, what you gentlemen have is the benefit of, quite frankly, not only an analysis of the factors and what I deem to be under part two an analysis of the factors and how this marriage fits into an equitable distribution scheme; but secondly, you have the benefit of a re-analysis of what I consider . . . to be the nature of the interests of the parties. And I think that is where gifts fit in.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> The court went back through an analysis looking at the gift in terms of what was it and what were the interests of the parties in that gifted property, *taken in conjunction with its analysis . . . of Part Two which is the [§ 20–107.3(E) ] factors,* and *overlaying* [the] factors under Part One [the equities and rights and interests of each party], *and came up with the award that I did.*

(Emphasis added.)

It is evident from the court's March 28, 1995 letter opinion that, in re-determining the amount of the award, the court did

not evaluate the "gifted" property in light of the statutory factors set forth in Code § 20–107.3(E). In its opinion letter, the court stated that it did not think it was necessary to reevaluate the Code § 20–107.3(E) factors, which had resulted in a monetary award to wife of $130,000. Rather the court determined the rights and interests of each party in the "gifted" property and "overlaid" that determination on the earlier result obtained by applying the factors set out under § 20–107.3(E). Furthermore, notwithstanding its finding that the property was marital, the court concluded that the acquisition by "gift" defined the wife's personal interest in the property and that the irrevocable nature of gifts precluded distribution inconsistent with that interest. The approach urged by wife and adopted by the trial court is neither in keeping with the statutory scheme governing equitable distribution adopted in Virginia nor compelled by this Court's decision in *McClanahan*.

A determination of the equities, rights, and interests of the parties in the marital property under Code § 20–107.3(D) is relevant only with respect to *whether* a monetary award should be made. *See McClanahan*, 19 Va.App. at 404, 451 S.E.2d at 694; *Brinkley v. Brinkley*, 5 Va.App. 132, 136–37, 361 S.E.2d 139, 140 (1987). Thus, where the evidence in the case shows that a party has equities, rights, and interests in the marital property, the court may not exercise its discretion to effectively exclude the property from the marital estate. *See McClanahan*, 19 Va.App. at 404, 451 S.E.2d at 694. However, once the court has determined that an award should be made, the *amount* of the award is determined by applying the factors set forth in Code § 20–107.3(E), not by applying Code § 20–107.3(D). *Brinkley*, 5 Va.App. at 137, 361 S.E.2d at 141 ("If the trial court determines *after* its examination [of Code § 20–107.3(D) ] that a monetary award is warranted, *'the amount* of the award ... shall be determined ... after

consideration of' the [Code § 20–107.3(E) ] factors") (emphasis added).[8]

Code § 20–107.3(A)(3)(d), (e), (f), and (g) addresses the *classification* of property obtained by gift, particularly as such property may have been subject to transmutation principles. *See generally Report of the Family Law Section of the Virginia State Bar on Equitable Distribution of Property in Divorce Proceedings*, House Document No. 19, at 12–13 (1991). Following the Maryland rule on the question, *see Grant v. Zich*, 300 Md. 256, 477 A.2d 1163 (1984), Virginia rejected the view that when separate property is jointly retitled, a common law presumption of gift applies. Code § 20–107.3(A)(3)(g); *see also* Brett R. Turner, *Equitable Distribution of Property* § 5.19 (2d ed.1994). Instead, under the statutory scheme adopted, the party seeking to have property acquired by interspousal transfer retain its classification as marital under § 20–107.3(A)(3)(g) must prove the property was a gift. Once a recipient spouse proves that a gift was made, the property is subject to distribution based on an analysis of the relevant factors. *Id.; see also McClanahan*, 19 Va.App. at 404–05, 451 S.E.2d at 694.

It does not follow, however, that the adoption of gift law principles to govern the classification of property in the context of divorce evinces a legislative intent that the same principles are to govern the distribution of the property. Neither the statutes nor existing case law supports the position that it is improper, where warranted by all the evidence and the application of the Code § 20–107.3(E) factors, to effectively "revoke" the gift by awarding the donor all or the greater portion of the "gifted" property's value. Marital

---

8. The analysis adopted in *Brinkley* is compelled by the language of the statute. Section 20–107.3(D) does not address in any respect how the amount of the award shall be determined. Code § 20–107.3(D) provides, in part, "based upon (i) the equities and the rights and interests of each party in the marital property, and (ii) the factors listed in subsection E, the court *has the power* to grant a monetary award." (Emphasis added.) How the monetary award should be *determined* is posited solely in Code § 20–107.3(E), which provides, in part, *"the amount* of any monetary award ... shall be determined ... after consideration of the following [ten] factors." (Emphasis added.)

property acquired by gift is no less subject to a disproportionate division, if warranted, than any other property in the marital estate, notwithstanding the "irrevocable" nature of the transfer, which must be proved for the purposes of classification.[9]

The equitable distribution statute compels this result. The statute does not treat property acquired by gift as an interest personal to the recipient but as an interest acquired by the marital estate. Code § 20–107.3(A)(3)(d), (e), and (f). Wife's position that an interest in marital property acquired by gift is "irrevocably" hers has the effect of taking the interest received by gift out of the marital estate and rendering it her separate property. While this position may be consistent with common law principles governing gifts, it is inconsistent with equitable distribution principles.[10]

The majority adheres to the position that the trial court's reconsidered award was based on an application of the Code § 20–107.3(E) factors and, therefore, it defers to the trial court's determination that a disproportionate award was not warranted. Had the reconsidered award been based on an application of the factors, and assuming the evidence supported the reconsidered result, I would agree that the matter would involve a question of discretion. However, in my opinion, it is clear the trial court's reconsideration of the award did not involve a reevaluation of the Code § 20–107.3(E) factors. The trial court considered those factors in determining to

---

9. It is well recognized that the division of property under equitable distribution law is not constrained by legal principles developed in other contexts which define a party's interest in property. For example, equitable distribution of property held during the marriage in a tenancy by the entirety does not compel an equal division of the total value. See Lightburn v. Lightburn, —— Va.App. ——, —— S.E.2d —— (1996) (contrasting principles directing division of such property prior to enactment of Code § 20–107.3).

10. Were common law principles to be applied and the gift treated as one to the recipient spouse rather than to the marital estate, the entire property could be viewed as separate, not marital, with each spouse obtaining a one-half *separate* interest. Turner, *supra*, § 5.19, at 218. Such results are inconsistent with the equitable distribution scheme.

award wife $130,000. The court then reconsidered the award on the ground that it failed to give due weight to the fact that the property in question had been transferred by gift. The court increased the amount of the award by approximately 730% based not on a reconsideration of the Code § 20–107.3(E) factors but, rather, on the fact that the property was transferred by gift.

The trial court's decision was constrained by its view that, under *McClanahan,* the making of an interspousal gift of jointly titled property must be treated as creating an irrevocable personal interest in the property in each spouse for the purpose of distribution. In my opinion, the trial court's reliance on *McClanahan* was misplaced and resulted in a decision which reflects a limitation the law does not impose.

*McClanahan* involved both the proper classification of property acquired during the marriage and the proper exercise of discretion by the trial court in making a monetary award. 19 Va.App. at 403–04, 451 S.E.2d at 693–94. In addressing the proper classification of the asset in *McClanahan,* this Court made clear that where the evidence establishes that a gift of separate property has been made from one spouse to the married couple jointly, each party acquires an interest in the property which precludes effectively treating the asset as separate at distribution. *Id.* at 403–05, 451 S.E.2d at 693–94; *see also* Code § 20–107.3(A)(3)(d), (e), and (f).

In *McClanahan,* the husband used real property, known as Covesville Orchard, as consideration for the acquisition of the parties' marital home. 19 Va.App. at 401–02, 451 S.E.2d at 692–93. The orchard was titled in his name only but it was substantially acquired during the marriage. *Id.* at 401, 451 S.E.2d at 692. In the transaction, husband conveyed his one-half, undivided interest in the orchard, valued at $548,400, as consideration for the transfer of the interest in the marital home, by deed, to him and his wife. *Id.* at 402, 451 S.E.2d at 692–93. Although classifying the marital home as a marital asset, the trial court ultimately held that the monetary award to the husband should include the $548,000 value of the one-

half interest in the orchard which husband had used to acquire the marital home, having concluded that the interest in the orchard was husband's separate property. *Id.* at 400–03, 451 S.E.2d at 692–93. In effect, the trial court in *McClanahan* completely disregarded the interest the wife acquired in the marital home during the years of the marriage and disregarded her rights under Code § 20–107.3(E) to an award of a portion of that asset. Instead, the court made its award based solely on the source of funds used to acquire the marital home. It then awarded husband the entire value of his "separate" contribution used to acquire the marital home.

This Court reversed the award, concluding that the trial court had no discretion to enter the award which treated the asset as husband's separate property. *Id.* at 405, 451 S.E.2d at 694. However, *McClanahan* does not stand for the proposition that, when a joint interest in property is acquired by gift, the interest is beyond the reach and effect of the factors outlined in Code § 20–107.3(E) or that the distribution pursuant to those factors may not result in an unequal division.[11]

Finally, in my opinion, the trial court erred in considering husband's "fault" in deciding that husband could not revoke what the court considered unconditional, irrevocable gifts. In its initial opinion, the court found that husband's fault had no bearing on the distribution because wife failed to demonstrate that husband's adultery had an economic impact on the marital property. *See Aster*, 7 Va.App. at 5–6, 371 S.E.2d at 836. The court's later consideration of the economic impact of husband's fault on wife's rights to the marital estate is unexplained. Such an analysis differs markedly from one which turns on the diminution in the value of the marital estate as a result of the fault of one of the parties, and it is not supported in the case law. *Id.* (concluding that only circumstances affecting the partnership's economic condition are factors to

---

11. The *McClanahan* Court merely found that the wife obtained the same interest in the martial home as had the husband and that, therefore, an award of the asset to wife as well as to husband was warranted. The fact that wife's interest was acquired by gift, however, was not dispositive of the proper *amount* of the award.

be considered); *see also Donnell v. Donnell,* 20 Va.App. 37, 41–42, 455 S.E.2d 256, 258 (1995); *Gamer v. Gamer,* 16 Va.App. 335, 341, 429 S.E.2d 618, 622 (1993); *Marion v. Marion,* 11 Va.App. 659, 664, 401 S.E.2d 432, 436 (1991). Even a divorce on no-fault grounds is likely to have an impact on the ultimate personal estate each of the parties will be awarded; certainly, neither will enjoy all of the interest and rights they had in the total marital estate before the divorce.

In summary, because (1) the procedure the trial court used to re-determine the amount of the monetary award contravenes the statutory scheme; (2) the trial court's discretion in making the equitable distribution award was exercised in accordance with its misconception that wife's interest in the "gifted" property was "irrevocable" and not subject to a distribution that may effectively divest her of that interest; and (3) the trial court misapplied the principles of *Aster v. Gross,* I would reverse and remand the case for reconsideration of the equitable distribution award.