COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Clements and Senior Judge Willis
Argued at Alexandria, Virginia


ROBERT THOMAS GARRETT

MEMORANDUM OPINION[*] BY
v.      Record No. 0155-04-4               JUDGE JERE M.H. WILLIS, JR.
                                                    NOVEMBER 2, 2004
DONNA JEAN GARRETT


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jonathan C. Thacher, Judge

Larry Edwin Johnson for appellant.

Herbert S. Rosenblum for appellee.


Robert Thomas Garrett contends the trial court erred in finding various promissory notes unenforceable and in refusing to classify the debts represented by those notes as his separate property. Those rulings affected the trial court's determination of the parties' monetary shares of the marital home.

Although Mr. Garrett presented six questions in his brief, he consolidated those questions into three arguments: (1) the trial court erred in ruling as a matter of law that the promissory notes were unenforceable; (2) even if the notes were not enforceable, the trial court erred in refusing to find they constituted gifts and should have been deemed husband's separate property; and (3) the trial court erred by failing to consider "whether . . . the promissory notes are enforceable . . . either in fashioning a monetary award or as constituting traceable separate property." We consider Mr. Garrett's issues as presented in these arguments.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Because we find no error in the trial court's holding that the notes were unenforceable and that the evidence did not prove that the proceeds of those notes were Mr. Garrett's separate property, we affirm the judgment of the trial court.

BACKGROUND

Mr. and Mrs. Garrett married on February 16, 1980, and separated on February 10, 2002. Prior to the marriage, Mr. Garrett owned as his separate property a home at 1807 Dryden Avenue, Ithaca, New York (the Dryden Property), in which the parties resided. On July 7, 1980, he borrowed $10,000 from his parents (the Dryden Loan) to construct an addition to the Dryden Property.

The parties lived in the Dryden Property until they sold it in 1986. They used the proceeds of the sale to purchase and move into 326 Blackstone Avenue, Ithaca, New York (the Blackstone Property). On August 22, 1986, Mr. Garrett borrowed $20,000 from his parents to help purchase the Blackstone Property and gave them a promissory note for that amount (the Blackstone Note). The Note contained the following provision:

> Not later than the fifteenth day of each month, beginning in September 1986, the Borrower(s) will pay the Lender's Trustees a minimum of Two Hundred Dollars ($200.) of which amount the proportionate per annum interest will apply.

On May 16, 1990, the parties sold the Blackstone Property and used the proceeds to help fund the purchase of 4216 Ann Fitz Hugh Drive, Annandale, Virginia (the Annandale Property). From December, 1990 through December, 1991, Mr. Garrett borrowed additional money from his parents for the purchase of and improvements to the Annandale Property, giving them a series of promissory notes totaling approximately $160,000 (the Annandale Notes).

On November 10, 2003, the trial court conducted an *ore tenus* hearing to determine the status of and debts created by the loans. The parties submitted exhibits, including four

-2-

promissory notes for $15,000, $50,000, $25,000 and $35,000, and four checks that Mr. Garrett's

parents had written to him for $50,000, $50,000, $25,000 and $35,000.[1]

In its opinion letter dated November 13, 2003, the trial court made findings of fact and

conclusions of law. It found that although the Dryden Loan "[wa]s not evidence[d] by a note,

only a copy of the check written by" Mr. Garrett's parents, "the parties agree[d] that this was a

loan." Therefore, "at best," the court "conclude[d] that at one point there was a note payable on

demand signed on or about July 7, 1980." Such a note given in 1980 "would no longer be

enforceable."

Finding that "there has . . . never been any payment on the debts created by the

Blackstone Note," the trial court applied Code § 8.3A-118 and found that an action was never

timely commenced within six years of the due date.

The trial court found that the Annandale Notes contained an August 1991 maturity date

and that husband failed to pay the amounts in full. Relying on Code § 8.3A-118(a),[2] the trial

court ruled that any action on the notes was "barred by the statute of limitations."

ENFORCEABLILTY OF PROMISSORY NOTES

After "reviewing the exhibits, listening to the witnesses' testimony, and considering

counsels' arguments," the trial court made the following detailed findings:

> All of the Annandale Notes are identical with exception of
> the amount loaned and the date they were entered into. Each of the
> Annandale Notes contains a payment provision that states
> "[Husband] may make monthly payments on the first day of each
> month beginning [a date approximately four to six weeks
> following the date that particular note was signed] . . . ." See Joint
> Exhibits at Tab 9. Later in the same payment provision of each of

---

[1] Although no corresponding promissory note was produced for one of the $50,000 loans, the parties stipulated to the loan.

[2] The trial court, in its opinion letter, referred to Code § 3.8A-118. This is apparently a typographical error, intended to refer to Code § 8.3A-118, the Uniform Commercial Code. The Code contains no Title 3.8.

these notes it states "[i]f, on August 1, 1991, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the 'maturity date.'" Id. [Husband] did not pay all of the amounts in full when the August 1, 1991 "maturity date" arrived. At that point the [husband] was in breach and the lenders could have sued to recover the amounts due on the note. "[A]n action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date." Va. Code § [8.3]A-118(a). Even assuming that the monthly payments the [husband] was making under these notes could successfully toll the running of the statute of limitations, the [husband] testified that he has not made a payment since July of 1994. Any action the lenders could have brought under the Annandale Notes would still be barred by the statute of limitations.

The court concludes that the debts created by these loans or promissory notes are unenforceable as being barred by the statute of limitations and may not be considered part of the marital debt. Thus, they are not a barrier to this Court's equitable distribution determination.

The trial court concluded that "[t]he debts created by the Dryden Loan, the Blackstone Note, and the Annandale Notes are unenforceable, being barred by the statute of limitations, and may not be considered as part of the marital debt."

The judgment of a trial court sitting in equity, "when based upon an *ore tenus* hearing, is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Frye v. Spotte, 4 Va. App. 530, 537, 359 S.E.2d 315, 319-20 (1987).

Statutes of limitations are procedural and "address[] not the viability of the claim itself, but its enforceability." Taylor v. Taylor, 14 Va. App. 642, 648-49, 418 S.E.2d 900, 904 (1992). Therefore, the statute of limitations in effect at the time enforcement is sought controls. The trial court held that "the applicable statute for determining the current status of these debts" is the 1992 version of Code § 8.3A-118. The provisions of Code § 8.3A-118 have remained unchanged since 1992. Code § 8.3A-118(a) provides, in pertinent part:

-4-

[A]n action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date.

Code § 8.3A-118(b) provides, in pertinent part,

[I]f demand for payment is made to the maker of a note payable on demand, an action to enforce the obligation of a party to pay the note must be commenced within six years after the demand. If no demand for payment is made to the maker, an action to enforce the note is barred if neither principal nor interest on the note has been paid for a continuous period of ten years.

Code § 8.3A-108 defines commercial instruments that are "[p]ayable on demand or at a definite time."

(a) A promise or order is "payable on demand" if it (i) states that it is payable on demand or at sight, or otherwise indicates that it is payable at the will of the holder, or (ii) does not state any time of payment.

(b) A promise or order is "payable at a definite time" if it is payable on elapse of a definite period of time after sight or acceptance or at a fixed date or dates or at a time or times readily ascertainable at the time the promise or order is issued, subject to rights of (i) prepayment, (ii) acceleration, (iii) extension at the option of the holder, or (iv) extension to a further definite time at the option of the maker or acceptor or automatically upon or after a specified act or event.

(c) If an instrument, payable at a fixed date, is also payable upon demand made before the fixed date, the instrument is payable on demand until the fixed date and, if demand for payment is not made before that date, becomes payable at a definite time on the fixed date.

Code § 8.3A-108.

Mr. Garrett acknowledged that he never made any payment on the Dryden Loan or the Blackstone Note. Although he initially made monthly payments of $1,500 on the Annandale Notes, his last payment was in June 1994. The Annandale Notes included an August 1, 1991 "maturity date" at which time he agreed to pay the "remaining amounts in full." The remainder owed on the Annandale Notes was never paid.

-5-

We hold that the trial court accurately analyzed the several notes and correctly applied the appropriate statutes of limitation to find them unenforceable and not marital debts.

## REFUSING TO FIND NOTES WERE GIFTS

Mr. Garrett next contends that if the notes were unenforceable, their proceeds constituted gifts to him and should have been determined to be his separate property.

Code § 20-107.3(A)(1)(ii) defines as separate property "all property acquired during the marriage by . . . gift from a source other than the other party."

"To establish the existence of a gift, the donee must prove by clear and convincing evidence: '(1) the intention on the part of the donor to make the gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee.'" Utsch v. Utsch, 38 Va. App. 450, 458, 565 S.E.2d 345, 349 (2002) (quoting Theismann v. Theismann, 22 Va. App. 557, 566, 471 S.E.2d 809, 813, aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996)); see also Dean v. Dean, 8 Va. App. 143, 146, 379 S.E.2d 742, 744 (1989) (holding that one who claims ownership of property by virtue of a gift bears the burden of proving by clear and convincing evidence the donor's donative intent and delivery of the gift).

The record fails to support Mr. Garrett's position. The evidence proved neither donative intent nor a donative act on the part of Mr. Garrett's parents. They never marked the notes paid or stated an intention to discharge the debts. Mr. Garrett thus failed to prove by clear and convincing evidence that the notes or their proceeds were gifts. The trial court did not err in refusing to find the notes to be separate property.

## REFUSAL TO CONSIDER NOTES IN
## FASHIONING A MONETARY AWARD OR AS TRACEABLE SEPARATE PROPERTY,
## WHETHER ENFORCEABLE OR UNENFORCEABLE

Finally, Mr. Garrett contends that if "the promissory notes are [deemed] enforceable and [his] separate obligation . . ., then the loans to [him] for the construction of the house should have

been taken into consideration when determining any award of value between the parties of the marital residence."  Because we hold the trial court correctly determined the notes to be unenforceable, we do not address this argument.

Alternatively, Mr. Garrett contends that if the notes are deemed unenforceable, "the court must determine whether [his] parents['] decision not to enforce the promissory notes constituted a gift to [him]."  If they constituted a gift, the "question becomes whether or not the separate property is traceable."

Mr. Garrett failed to prove the notes were gifts.  Accordingly, they were not his separate property and there was no need to trace them.

We affirm the judgment of the trial court.  We grant Mrs. Garrett's request for an award of attorney's fees in connection with this appeal and remand the case to the trial court for the determination of that award.

<u>Affirmed and remanded.</u>